**Theresa J. STE. MARIE, Individually and on behalf of all other persons similarly situated, Plaintiffs,**

v.

**EASTERN RAILROAD ASSOCIATION and Traffic Executive Association, Defendants.**

**No. 75 Civ. 4736.**

United States District Court, S. D. New York.

Oct. 20, 1976.

---

11. duPont has no objection to this. Docket Item 1, p. 2.

12. Part (a) of DMRC's limited request, in text accompanying note 9, *supra.*

13. Docket Item 3, Exhibit F.

Sue Wimmershoff-Caplan, New York City, for plaintiffs.

Conboy, Hewitt, O'Brien & Boardman, New York City, for defendants.

ROBERT L. CARTER, District Judge.

## OPINION

Plaintiff Theresa J. Ste. Marie ("Ste. Marie") moves, pursuant to Rule 23, F.R. Civ.P., for certification of a plaintiff class of all female employees of the defendant organizations. Plaintiff, acting on her own behalf and on behalf of those similarly situated, has brought this sex-discrimination suit for injunctive and declaratory relief and damages against her employers, the Eastern Railroad Association ("Eastern R.R.") and the Traffic Executive Association ("TEA"). Plaintiff charges her employers with engaging in several practices alleged to be violative of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*

Eastern R.R. describes itself as

"a voluntary unincorporated association formed on November 1, 1970, in New York by the major railroad companies operating in the eastern part of the United States in the territory generally east of the Mississippi River and north of the Ohio River. It performs various services for the member lines in the areas of traffic management (rate making and tariff compiling), inspection services, and public relations."

(Affidavit of Joseph Liebscher, at pp. 1–2). The TEA is a division of Eastern R.R., one of three component organizations. TEA states that its "primary function . . . is to perform services in the traffic management area relating to the establishment of freight rates under which various commodities move in railroad transportation." (*Id.*, at p. 2). TEA has several departments,

most of which are located at its offices in New York City. Plaintiff is a clerical employee of the Accounting Department of TEA, which is located in New York. She has always worked for defendants in New York. The two other component organizations of Eastern R.R. are the Eastern Weighing and Inspection Bureau and the Railroad Perishable Inspection Agency. These divisions, many of whose employees are stationed outside of New York, perform specialized functions such as inspecting loaded freight cars and investigating loss and damage claims. Defendants employ a total of 573 individuals, 121 of whom are female.

Plaintiff asserts that defendants follow a number of discriminatory policies that have prevented her and other female employees from advancing to positions of pay and responsibility commensurate with their abilities. In the complaint, plaintiff charges that men, even when they perform the same work, advance more quickly and are paid more than women. Plaintiff also claims that defendants impose requirements for promotion on females that are overlooked or waived for males, and that experienced females train newer male hires, who are subsequently advanced above their mentors. She relates that although males are encouraged to take courses related to their work for which defendants pay the tuition, she was denied such assistance. In addition, she alleges that defendants conceal opportunities for advancement from female workers. She states that as a result of these practices, very few of the female employees of the defendants have positions as officials, executives, or managers and that most of the female employees are concentrated in clerical positions.

Plaintiff states that she has been employed by the defendants for twenty-one years and that were it not for these practices she would have advanced much further in the organizational structure than she has been allowed to thus far. Her specific charges were filed with the Equal Employment Opportunity Commission in August, 1974. The EEOC dismissed the charges on June 30, 1975, after an investigation by the New York State Human Rights Commission found an absence of probable cause and an appeal of that finding to the Human Rights Appeal Board failed. This action followed. For the reasons set out below, plaintiff's motion for class action certification is granted.

For class action treatment to be appropriate, all the requirements of subdivision (a), and one of the alternative requirements of subdivision (b), of Rule 23 must be satisfied.[1]

### Numerosity (Rule 23(a)(1))

■ Defendants acknowledge that Eastern R.R. and its component organiza-

---

1. Rule 23, F.R.Civ.P., provides, in pertinent part;

(a) *Prerequisites to a Class Action.* One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

(b) *Class Actions Maintainable.* An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:

\* \* \* \* \* \*

(2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropri-

ate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or

(3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

tions have 121 female employees. Eastern R.R. states that these women are spread out through an eighteen-state area. According to defendants' Equal Employment Opportunity Employer Information Report for 1975, 59 of these female employees work at the New York headquarters. Given these numbers, the test of numerosity is clearly met. *Korn v. Franchard Corp.,* 456 F.2d 1206, 1209 (2d Cir. 1972); *Local 246, Utility Workers Union of Am. v. Southern Cal. Edison Co.,* 13, F.R.Serv.2d 23a.2, Case 1, p. 479, 480 (C.D.Cal.1969); *Butler v. Local No. 4 and Local No. 269, Laborers' Int'l Union,* 308 F.Supp. 528, 533 (N.D.Ill.1969). The geographical dispersion of defendants' employees makes joinder more difficult and class action treatment therefore more appropriate than it would be if all could be found in one district. *Young v. Trailwood Lakes, Inc.,* 61 F.R.D. 666, 668 (E.D.Ky. 1974).

*Common Questions of Law or Fact (Rule 23(a)(2))*

Sex discrimination cases, by their very nature, involve behavior that affects a group of people. *Bowe v. Colgate-Palmolive Co.,* 416 F.2d 711, 719 (7th Cir. 1969); *Oatis v. Crown Zellerbach Corp.,* 398 F.2d 496, 499 (5th Cir. 1968). In this case, plaintiff charges that defendants treat female employees uniformly in a fashion that violates Title VII. Plaintiff alleges particular acts of discrimination against her by the defendants and avers that these acts exemplify a discriminatory pattern of behavior directed against female employees. As Judge Lasker explained in *Hecht v. Cooperative for Am. Relief Everywhere, Inc.,* 351 F.Supp. 305, 312–13 (S.D.N.Y.1972):

"This dual approach—alleging that a specific employment benefit has been denied and that its deprivation results from a type of discrimination forbidden by Title VII—arises inevitably from the statute's structure, which provides a method of eliminating 'class' discrimination through suits by individual claimants acting as private 'attorneys general'. . . . The second half of the equation—the underlying discriminatory attitude—not only can, but most appropriately should be decided as a class action since 'the evil sought to be ended is discrimination on the basis of a class characteristic, i. e., race, sex, religion or national origin.'

. . .

If, having established the existence of this attitude to the class as a whole, it becomes necessary, later, to consider claims which are not common to the class, Rule 23's flexibility enables the court to decide those questions on an individual basis."

(citations omitted).

Defendants assert that hiring decisions are not concentrated in the central management of Eastern R.R.; rather, they say, responsibility for such decisions is dispersed throughout the companies' network:

"In general, hiring, promotion, and termination practices and procedures are in the hands of the local district managers with the various segments throughout the country."

(Defendants' memorandum at p. 25)

For example, one office posts available job openings while the others do not.

Plaintiff has submitted to the court copies of defendants' Equal Employment Opportunity Employer Information Report EEO–1 for 1975. This report discloses the following distribution of defendants' female employees as compared to male employees:

| | TOTAL EMPLOYEES IN ESTABLISHMENT | | |
|---|---|---|---|
| Job Categories | Total Employees Including Minorities (1) | Total Male Including Minorities (2) | Total Female Including Minorities (3) |
| Officials and managers | 92 | 92 | 0 |
| Professionals | 100 | 100 | 0 |
| Technicians | 69 | 67 | 2 |
| Sales workers | | | |
| Office and clerical | 234 | 124 | 110 |
| Craftsmen (Skilled) | 8 | 8 | 0 |
| Operatives (Semi-skilled) | 43 | 43 | 0 |
| Laborers (Unskilled) | 16 | 16 | 0 |
| Service workers | | | |
| TOTAL | 562 | 450 | 112 |

This chart shows an extreme concentration of female employees in office and clerical work and a dearth of them in higher positions. The complete absence of women in the categories: "Officials and managers" and "Professionals" suggests that defendants may follow an across-the-board policy of discrimination. While, of course, there may be other reasons for the configuration shown in the chart, the possibility exists that defendants have general hiring policies that override any local autonomy that district managers may have as to hiring procedures and practices. Defendants cannot immunize hiring policies from class action attack by creating an appearance of divided responsibility. Wherever the locus of decision-making power nominally resides, the existence of a broad policy to limit the advancement of women within the defendant organizations, to pay them less for their efforts than men, or otherwise to discriminate against them, is a common question affecting all class members. *Leisner v. New York Tel. Co.,* 358 F.Supp. 359, 371 (S.D.N.Y.1973). As Judge Lasker noted in *Hecht, supra,* in a case involving such common questions, the court has the power to consider particularized problems growing out of individual situations within the context of a class action.

*Representative Party's Claims Typical to the Claims of the Class (Rule 23(a)(3))*

■ Defendants contend that plaintiff lacks the expertise necessary for advancement into many technical positions and therefore is not typical of those who would apply. This argument must be rejected since defendants do not challenge plaintiff's assertion that many technical and high level employees lack advanced degrees and have received their training while employed at Eastern R.R. In addition, the thrust of plaintiff's complaint is that she has been denied the opportunity to be trained for advancement. Similar arguments have been rejected by this court in Title VII cases. For example, in *Rosario v. New York Times,* 10 E.P.D. ¶ 10,450, p. 5944 (S.D.N.Y.1975), a race discrimination case, Judge Metzner responded to the Times' argument that named plaintiffs could only represent employees working in the same departments with them.

"The Times overlooks the fact, however, that plaintiffs are alleging, among other things, that the discrimination causes a lack of mobility, and that training programs are administered in such a way that members of minority groups cannot advance, either within their own departments, or into other departments. Plaintiffs raise the compelling question of how racial discrimination could ever be challenged in a department which is all white, as it appears several of the departments here are. *Here, the very claim in issue is that there is a fundamental discrimination by the Times that is not limited to a department or specific job description, but affects every minority group employee and applicant.*" (Emphasis supplied) (Id. at 5947)

■ Plaintiff is a clerical employee of the defendants. She has applied in the past for advancement out of that job category, but her requests have been denied. She alleges that she has experienced discriminatory treatment in a number of other ways. She is, therefore, typical of defendants' female employees, the vast majority of whom work in clerical or office jobs and therefore face the discriminatory practices alleged. *Kohn v. Royall, Koegel & Wells,* 59 F.R.D. 515 (S.D.N.Y.1973).

*Fair and Adequate Protection of the Class' Interests (Rule 23(a)(4))*

■ Defendants argue that Ste. Marie is ill-suited to represent a class consisting of all of its employees. Defendants first suggest that Ste. Marie lacks personal knowledge of the entire operation because she has worked only in the Accounting Department of TEA. The organizational network is so spread out, and the various responsibilities of the different departments so specialized, say defendants, that it would be imprudent to allow one employee with limited knowledge to represent all of the female employees. This argument has no force. There is no requirement that a class action plaintiff

have personal knowledge of the entire business operation of the party sued. Extensive discovery procedures are available to plaintiff providing counsel with the means to assemble the data needed in presenting plaintiff's case. Plaintiff is currently employed by defendants and has worked for them for many years. She is as knowledgeable of Eastern R.R. as a clerical employee could be. *See Dickerson v. United States Steel Corp.,* 64 F.R.D. 351 (E.D.Pa.1974).

 Defendants also contend that plaintiff cannot be an adequate representative of all employees, since she is not a member of a union. Some of defendants' employees belong to the Brotherhood of Railway, Air Line and Steamship Clerks and others are represented by the International Longshoremen's Association. Of course a party does not have standing to represent a group of which she is not a part. *Hall v. Beals,* 396 U.S. 45, 49, 90 S.Ct. 200, 24 L.Ed.2d 214 (1969). But such a conclusion first requires a finding that some relevant criterion separates that party from the group. Defendants do not detail any way in which its agreements with these unions is affected by this assault on their treatment of women. They have not submitted copies of the relevant collective bargaining agreements nor have they stated that particular practices challenged by this lawsuit are mandated by union agreement. Further, they have not even informed the court of whether any of the union members are female. It would be futile in the extreme for the court to require a female plaintiff to come forward from a group that had no females. Since the defendants have not shown that union membership is relevant to the issues raised in this lawsuit, the court rejects the argument that lacking this characteristic, plaintiff is an inadequate representative. *See Hecht v. Cooperative for Am. Relief Everywhere, Inc.,* 351 F.Supp. 305, 313 (S.D.N.Y.1972).

Further, defendant argues that plaintiff is deficient in the requisite skill and knowledge for many of the highly technical positions within Eastern R.R. Without such expertise, argue defendants, Ste. Marie should not be allowed to represent those women who would apply for such positions with sufficient qualifications. Defendants point to plaintiff's unsuccessful complaint with the EEOC that preceded this lawsuit and argue that Ste. Marie was unqualified for the position she sought making her case unique.

 This argument, too, is of little moment. Plaintiff's failure before the EEOC is of no precedential value in this court, where she is entitled to a trial *de novo* on the issues raised. *Alexander v. Gardner-Denver Co.,* 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974); *Voutsis v. Union Carbide Corp.,* 452 F.2d 889, 893 (2d Cir. 1971), cert. denied, 406 U.S. 918, 92 S.Ct. 1768, 32 L.Ed.2d 117 (1972); *Benneci v. Department of Labor, New York State Div. of Employment,* 388 F.Supp. 1080, 1082 (S.D.N.Y. 1975). Further, unlike the plaintiff in *Wright v. Stone Container Corp.,* 524 F.2d 1058 (8th Cir. 1975), relied on by defendants, neither plaintiff nor her counsel has committed any act demonstrating a lack of competence that might endanger the rights of absent class members.

 Of course it is preferable in a case of this kind to have more than one named party represent the interests of the class. *See Korn v. Franchard Corp.,* 50 F.R.D. 57, 58–59 (S.D.N.Y.1970). But the risks entailed in suing one's employer are such that the few hardy souls who come forward should be permitted to speak for others when the vocal ones are otherwise fully qualified. *See Gilinsky v. Columbia Univ. in the City of New York,* 62 F.R.D. 178, 180 (S.D.N.Y.1974). Plaintiff has a long employment record with the defendants. She has more than once applied for advancement. She pursued her claim before the EEOC without the aid of counsel. She has thus demonstrated that she possesses a sincere interest in the successful prosecution of this litigation and the energy to see the case to its end. The expertise of her counsel is not challenged.

*Action or Inaction on Grounds Generally Applicable to Class—Appropriateness of Injunctive or Declaratory Relief (Rule 23(b)(2))*

Plaintiff has asked for declaratory and injunctive relief that would prevent defendants from continuing their allegedly discriminatory practices. Ste. Marie also seeks damages. This situation is well-suited for class action treatment under subdivision (b)(2) of Rule 23, F.R.Civ.P., since a finding that defendants' practices are unlawful will necessarily affect all female employees. *See* Advisory Committee Notes to Rule 23, F.R.Civ.P., and cases cited therein. *Leisner v. New York Tel. Co.,* 358 F.Supp. 359, 373 (S.D.N.Y.1973). *Rosario v. New York Times,* 10 E.P.D. ¶ 10,450, p. 5944 (S.D.N.Y.1975). A claim for damages may properly be considered in a (b)(2) action as long as the monetary relief is not predominant. *Almenares v. Wyman,* 334 F.Supp. 512, 519 (S.D.N.Y.), *modified* 453 F.2d 1075 (2d Cir. 1971), *cert. denied,* 405 U.S. 944, 92 S.Ct. 962, 30 L.Ed.2d 815 (1972); *Lynch v. Sperry Rand Corp.,* 62 F.R.D. 78, 85 (S.D.N.Y.1973). A class of this size will be relatively easy for the court to manage. Rule 23 gives the court the power to consider individualized problems if they appear. Additionally, certification of the class can be re-evaluated at a later time should it appear that the class should be narrowed or decertified or if certification of subclasses becomes necessary.[2]

Accordingly, plaintiff's motion for certification of a plaintiff class is granted. Plaintiff is ordered to provide individual notice of the pendency of this action to each member of the class.

IT IS SO ORDERED.

2. Certification would also be appropriate in this case under subdivision (b)(3) of Rule 23. Since both sections are available, it is preferable to certify the class under (b)(2) since the availability of the right to opt out in a (b)(3) class action would unnecessarily complicate matters should injunctive or declaratory relief be needed. Further, there would be notice problems in this case that would call into play the protection that Rule (c)(2) provides to class

members in a (b)(3) action guaranteeing "individual notice to all members who can be identified through reasonable effort." *See Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 173, 94 S.Ct. 2140, 2150, 40 L.Ed.2d 732 (1974). Here it is simple for plaintiff to provide each class member with individual notice of the pendency of this action either by direct mailing or by having defendants place such notices in the pay envelopes of each female employee.