Jane DOE and Sally Roe, and all others similarly situated

v.

**FIRST CITY BANCORPORATION OF TEXAS, INC., et al.**

Civ. A. No. 75–H–1191.

United States District Court,
S. D. Texas,
Houston Division.

Oct. 24, 1978.

Eliot P. Tucker, Mandell & Wright, Houston, Tex., for plaintiffs.

John H. Smither, Vinson & Elkins, Houston, Tex., for defendants.

## MEMORANDUM AND ORDER

SINGLETON, District Judge.

Plaintiffs Jane Doe and Sally Roe, seeking to represent a class of similarly situated women, have instituted this action for injunctive relief and damages pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq., against First City Bancorporation of Texas, Inc. (Bancorporation) and ten member banks of that bank holding company, including First City National Bank of Houston (FCNB).[1]

On or about October 31, 1974, plaintiffs caused to be filed in their behalf a third party complaint with the Equal Employment Opportunity Commission (EEOC) alleging discrimination on the basis of sex with regard to terms and conditions of employment. The EEOC issued "Right-to-Sue" letters on or about May 7, 1975 and June 25, 1975 and plaintiffs instituted this action within the statutory ninety-day period on July 8, 1975.

Before the court is the plaintiffs' motion for certification of this action as a class action. Following extensive discovery on the issue, the parties have submitted ample evidence through deposition testimony, exhibits, and interrogatories as well as briefs and memoranda of law to enable the court to determine whether this case comports with the requirements of Rule 23, Federal Rules of Civil Procedure.

The basic requirements for a class action are set out in Rule 23(a) as follows:

(a) *Prerequisites to a Class Action.* One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Plaintiffs seek to have the class certified pursuant to Rule 23(b)(2) and therefore must also satisfy the following requirements:

(b) *Class Actions Maintainable.* An action may be maintained as a class action if the prerequisites of sub-division (a) are satisfied, and in addition:

. . . . .

(2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole . . . .

■ The burden is on the plaintiffs in this case to establish their right to maintain the action as a class action: *East Texas Motor Freight System, Inc. v. Rodriguez,* 431 U.S. 395, 97 S.Ct. 1891, 52 L.Ed.2d 453 (1977); *EEOC v. D. H. Holmes Co.,* 556 F.2d 787 (5th Cir. 1977). The class which plaintiffs seek to represent is composed as follows:

(a) all current female employees of all defendants;

(b) all future female employees of all defendants;

(c) all former female employees of all defendants who left defendants employ on or after May 3, 1974 (180 days prior to the date the EEOC charge was filed);

(d) future female applicants of all defendants;

(e) former unsuccessful female applicants of all defendants who were rejected for employment on or after May 3, 1974.

---

1. The nine additional defendants are Executive National Bank, Suburban National Bank, Almeda-Genoa Bank, First State Bank of Clear Lake City, Gulfgate State Bank of Houston, Highland Village State Bank, Humble State Bank, LaPorte State Bank, and Northline State Bank.

### The Plaintiffs

Plaintiff Jane Doe is currently employed by FCNB and has been on leave of absence to complete law school for over a year. She was first employed by FCNB in March, 1973, with the title of Municipal Bonds Trading Assistant. Ms. Doe testified at her deposition that her job duties were mostly clerical including typing and filing. At the time of her employment she was a college graduate. Though Ms. Doe's job title remained the same, her job description changed in that she gradually ceased doing clerical work and by November 15, 1974, had moved into an exempt[2] position. While in that position an employee was hired and was supervised by Ms. Doe to perform clerical functions while Ms. Doe assumed responsibilities for underwriting and greater customer contact. On January 1, 1976, Ms. Doe was promoted to her present position as an officer of the bank. Ms. Doe has never applied for employment at any other defendant bank or at Bancorporation. As of the time of her deposition Ms. Doe's future employment plans were not certain and she did not indicate whether or not she intends to return to her position or any position at FCNB.

Ms. Doe claims that she has been discriminated against in the following manner:

. . . the defendants treated her less favorably than similarly qualified male employees because of her sex in several ways including but not limited to initial job placement, rate of initial pay, denial of increases in pay, assignment of title, assignment of initial employee classification, denial of special training and on-the-job opportunities, assignment of furniture, assignment of duties and responsibilities, and exclusion from several department functions, meetings and activities.

Plaintiff's Memorandum in Support of Class Certification, at 5

Plaintiff Sally Roe was first employed by FCNB in a clerical position on June 4, 1973. She was a high school graduate at the time of her employment and remained a non-exempt employee until she voluntarily terminated her employment with FCNB in December, 1974. In the summer of 1974, while still employed at FCNB she was an unsuccessful applicant for a position at Executive National Bank, one of the defendant member banks named in this lawsuit. Ms. Roe was next employed by a non-member bank for one and one-half years after which she completed a course in floral design in August, 1976. As of the date of her deposition she stated she was not interested in reemployment with FCNB.

Ms. Roe's claims against the defendants include the following:

. . . the defendants treated her less favorably than males similarly situated and qualified because of her sex in that the defendants, among other things, paid her lower initial wages, denied her increases in pay to match increased responsibilities, assigned her demeaning tasks and assigned essentially secretarial duties to her that were never assigned to males similarly situated.

Plaintiffs' Memorandum in Support of Class Certification, at 5

### The Defendants

According to the deposition of Charles W. Hinton, Vice-President of Personnel for First City Bancorporation of Texas, Inc., Bancorporation owns virtually one hundred percent of the stock of all ten member banks. Hinton Deposition, at 33. Plaintiffs have alleged that incident to that ownership Bancorporation "exercises a great deal of control over the employment policies of its member banks, both through its own personnel department and through its senior management." Plaintiffs' Memorandum in Support of Class Certification, at 18. The plaintiffs have submitted evidence to

2. Defendants' employees are apparently classified in two broad categories with reference to the positions they hold. "Non-exempt" employees appear to hold lower level positions in the clerical and technical areas, while "exempt" employees hold positions of a managerial or official type. Compensation and responsibilities are apparently lower in the "non-exempt" position than the "exempt" position.

support their contention that Bancorporation not only has the power to direct and control employment policies in all member banks, but that in certain relevant areas it has done so, for example, by recommending the hiring and firing of top officials in member banks, by coordinating and facilitating internal transfers of personnel between banks, by suggesting and urging the adoption by all member banks of a new application form, and by instructing member banks to change their responses to questions appearing on Form EEO–1. The defendants strongly contest the plaintiffs' assertion that employment policy and practice within member banks is controlled by Bancorporation; they urge instead that Bancorporation merely "advised" its wholly-owned subsidiaries who in turn were not obligated to follow such "advice".

In a letter dated February 27, 1976, sent from Bancorporation to the "Benefits Coordinators" of all member banks, Mr. Hinton informed those coordinators that "most member banks included some discriminatory questions on their employment application forms." Hinton Deposition, Exhibit 1. Attached to this letter was a new application form which Mr. Hinton, on behalf of Bancorporation, "strongly urge (d)" the other banks to adopt "in order to minimize . . . (their) exposure to charges of discrimination from applicants." Though the letter suggests that member banks could conceivably refuse to implement the new form, any who would so choose were specifically told to forward their version to Bancorporation for review and *approval*. It is an admitted fact, however, that all member banks did adopt the suggested form. Hinton Deposition, at 17.

Bancorporation has also provided advice and assistance to member banks in the preparation of their EEO–1 forms for submission to the EEOC. In a letter dated May 26, 1976, from Bancorporation's Supervisor of Benefits Planning and Compensation, all member banks were directed to follow enclosed instructions in filling out their EEO reports. Those instructions included that a change be made by all member banks having less than 100 employees who answered "yes" to a question in 1975 to answer "no" to the same question in 1976, regarding common ownership and management with other entities employing 100 or more employees. The suggestion was complied with and resulted in excusing two member banks from reporting the racial and sexual composition of their work force as they had done in prior years. Hinton Deposition, at 40–42.

A further example of Bancorporation's involvement in member banks' employment practices is its operation of an internal transfer program. Under this program Bancorporation functions as an internal employment agency through which member banks funnel their requests for candidates to fill vacancies. Hinton Deposition, at 25. Bancorporation, in turn, informs member banks of these vacancies and they send applicants' resumes to Bancorporation for screening and eventual forwarding to the member banks having the vacancies.

In the case of candidates for the highest level officer positions, Bancorporation in several instances has referred candidates for the position of president and vice president of member banks. Though Mr. Hinton stated that his particular office was not directly involved in these referrals, answers to interrogatories by First City National Bank Executive Plaza and First City Bank Clear Lake indicates that these individuals recommended by Bancorporation were in fact hired. In addition in the case of Clear Lake, Bancorporation recommended the firing of the president. In all instances Bancorporation's recommendations were followed.

This evidence, all of which is not set out in detail in this memorandum, strongly indicates that Bancorporation exercises control over employment practices of member banks.

*Plaintiffs' Standing to Sue All Defendants*

Defendants oppose the existence of any class and especially contend that these plaintiffs cannot represent any employees outside FCNB where they were both em-

ployed. Defendants prefer to characterize Bancorporation's involvement in employment policies and practices as merely advisory rather than obligatory. Whichever characterization the parties employ, the court is most interested in the fact that in the highly significant areas explored, supra, the "advice" of Bancorporation has been uniformly followed.

■ As the Supreme Court has repeatedly held, "a class representative must be part of the class and 'possess the same interest and suffer the same injury' as the class members". (Citations Omitted) *East Texas Motor Freight*, supra, 431 U.S. at 430, 97 S.Ct. at 1896. The interests possessed by these plaintiffs and by prospective members of the class they seek to represent are: to be hired, to work, and to progress in their respective positions, and to be compensated accordingly in an atmosphere free from the effects of an illegally discriminatory policy. The injuries allegedly suffered by these plaintiffs are essentially the same as that of other women in member banks working under the same policy, regardless of whether they work at different locations or whether those different locations employ a relatively large or small work force. All member banks are totally owned by Bancorporation. Plaintiffs have introduced evidence that Bancorporation has exercised the influence and control incident to its ownership. The facts presented in this case do not comport with those in *La Mar v. H. & B. Novelty & Loan Co.*, 489 F.2d 461 (9th Cir. 1973) where the court refused to certify a class when the plaintiff's claim was against a defendant *unrelated* to other defendants against whom the other class members had claims. The court in *La Mar* specifically excepted from its holding:

> situations in which all injuries are the result of a conspiracy or concerted schemes between the defendants at whose hands the class suffered injury. Nor is it intended to apply in instances in which all defendants are juridically related in a manner that suggests a single

resolution of the dispute would be expeditious.

*La Mar* at 466.

■ The existence of separate corporate entities is not an impenetrable barrier where plaintiffs allege common ownership and management resulting in a common policy of discrimination. *Clark v. Universal Builders*, 501 F.2d 324 (7th Cir. 1974), cert. denied, 419 U.S. 1070, 95 S.Ct. 657, 42 L.Ed.2d 666 (1974). *See also, Chambers v. Franchise Realty Corp.*, 12 F.E.P. Cas. 1817 (N.D.Ohio 1976), *Woodford v. Kinney Shoe Corp.*, 369 F.Supp. 911 (N.D.Ga.1973), *Stith v. Manor Baking Co.*, 418 F.Supp. 150 (W.D. Mo.1976).

The court finds especially applicable to the instant case the following analysis by the court in *Ste. Marie v. Eastern R.R. Association*, 72 F.R.D. 443, 448 (S.D.N.Y. 1976) where the plaintiffs submitted statistical evidence showing an extreme concentration of females in clerical positions and an absence of them in higher positions throughout defendants organization:

> While, of course, there may be other reasons for the configuration shown in the chart, the possibility exists that defendants have general hiring policies that override any local autonomy that district managers may have as to hiring procedures and practices. Defendants cannot immunize hiring policies from class action attack by creating an appearance of divided responsibility. Wherever the locus of decision making power nominally resides, the existence of a broad policy to limit the advancement of women within the defendant organizations, to pay them less for their efforts than men, or otherwise to discriminate against them, is a common question affecting all class members.

■ Plaintiffs have submitted sufficient evidence to indicate that a single employment policy emanates from Bancorporation, who supervises its application by the member banks. Whether or not this policy is discriminatory remains to be decided in the trial on the merits. For class certification purposes the court finds these plaintiffs

have the necessary nexus with other women employed by banks operating under the same policy and owned by the same corporation which directs and monitors that policy.

## Prerequisites

■ *Numerosity*: According to the EEO–1 reports, attached as Exhibit G to First City National Bank's (FCNB) answers to plaintiff's interrogatories, FCNB alone had at least 600 female employees at all times pertinent to this action. This number in itself supports a finding by the court that the proposed "class is so numerous that joinder of all members is impracticable." Rule 23(a)(1), F.R.C.P. In addition to FCNB, the available figures indicate that five of the remaining nine banks employ between 15 and 36 females with the number of female employees in four banks and Bancorporation unknown to plaintiffs at this time. Added to this number is an undetermined number of future applicants and employees as well as the undetermined number of female employees who left their employment. The joinder of all these claimants would clearly be impractical. *Carpenter v. Davis*, 424 F.2d 257 (5th Cir. 1970). The defendants, in their opposing memorandum, do not contest the question of numerosity and, in fact, that requirement is met.

*Commonality*: In their First Amended Original Complaint plaintiffs have made the broadest claims possible that defendants, commonly owned and operating under a common employment policy, treat female employees uniformly in a fashion which violates Title VII. Plaintiffs' First Amended Original Complaint, at 4.

While the Supreme Court in *East Texas Motor Freight v. Rodriguez*, 431 U.S. 395, 405, 97 S.Ct. 1891, 1898, 52 L.Ed.2d 453 (1977) stated that "careful attention to the requirements of Fed.Rule Civ.Proc. 23 remains . . . indispensable", the Court, immediately prior to that statement, acknowledged "that suits alleging racial or ethnic discrimination are often by their very nature class suits, involving classwide wrongs. Common questions of law or fact

are typically present." *East Texas Motor Freight*, supra, at 405, 97 S.Ct. at 1898. Sex, like race, religion, or national origin is a class characteristic which most appropriately lends itself to the class action form: *Oatis v. Crown Zellerbach Corp.*, 398 F.2d 496, 499 (5th Cir. 1968).

Plaintiffs in this case have not relied on a mere allegation of class-wide discrimination. In addition they have presented the court with statistics showing that while female employees have significantly outnumbered male employees, males employed in professional, managerial, and official positions have far outnumbered females in those same positions. Females, on the other hand, far outnumbered male employees in technical and clerical positions. Plaintiffs have provided these statistics for several of the years pertinent to this lawsuit and relevant to five of the nine banks named as defendants. Plaintiffs' Memorandum in Support of Class Certification, Appendix C.

In asserting that defendants do and have discriminated against women in all aspects of employment, the plaintiffs are also asserting that these defendants have acted on grounds generally applicable to the class. Moreover, plaintiffs seek injunctive relief to prevent defendants from continuing their allegedly discriminatory practices. Should the court eventually find that defendants practices are unlawful, all female employees will necessarily be effected. See, *Ste. Marie v. Eastern R.R. Association*, 72 F.R.D. 443 (S.D.N.Y.1976).

In addition to setting forth specific factual allegations of their individual claims, supra p. 4, the plaintiffs have set forth a list of some of the common questions of law and fact presented in this litigation, including:

(1) Whether defendants fail and have failed to hire females into upper level officer positions;

(2) Whether defendants fail and have failed to promote females into upper level officer positions;

(3) Whether defendants have discriminated against females in their training programs;

(4) Whether defendants discriminate against female employees in job assignments;

(5) Whether defendants have paid female employees lower wages than males for substantially equal work.

██ Rule 23(a)(2) does not require that all questions of law *and* fact be common, nor does it require that the individuals in the class be identically situated. The commonality required by Rule 23(a)(2) and Rule 23(b)(2) in the context of this case is the allegedly common policy and practice of the defendants which the plaintiffs contend is and has been discriminatory with regard to all members of the class. Assuming, arguendo, that Ms. Doe was promoted within three years to a position as an underwriting officer and another class member was promoted within two years to another officer position, in another member bank, that is a distinction without a difference. The significant questions of law and fact are: were they promoted later than males with the same qualifications; and if so, was their late promotion the result of a common policy of discrimination based on sex. *See Gordon v. Forsyth County Hospital Authority, Inc.*, 409 F.Supp. 708 (M.D.N.C.1976)

██ *Typicality*: In addition to the required existence of common questions of law and fact, the plaintiffs must demonstrate that their claims are typical of the claims of the class. Typical is not synonymous with identical.

Plaintiffs have alleged the existence of a discriminatory employment policy and claim to have been aggrieved by some of defendants' practices incident to that policy. Though plaintiffs may not claim to have suffered from every possible practice of the defendants they "have demonstrated a sufficient nexus to enable them to represent other class members suffering from different practices motivated by the same policies," *Payne v. Travenol Laboratories*, 565 F.2d 895, 900 (5th Cir. 1978). In *Payne* the defendant maintained that the plaintiff's class could not extend to employment practices applicable to positions for which the plaintiffs would not be qualified. The court

rejected that attack and held that in an "across the board" attack on a discriminatory policy, the nexus between plaintiffs and class was sufficient if plaintiffs had suffered from different applications of the same policy.

Title VII prohibits, inter alia, an employer from discriminating on the basis of sex with respect to initial hiring, discharge, compensation, terms, conditions, privileges of employment, employment opportunities, employee status, and training programs. Plaintiffs are alleging that defendants' employment practices which flow from a common policy encompass most of the areas enumerated in Title VII.

The plaintiffs have submitted sufficient evidence demonstrating that their employment experience with these defendants is typical of other members of the class they seek to represent. The positions occupied by the plaintiffs are typical of those occupied by women employees of all defendants. Employees of all defendants are either in exempt or non-exempt positions. Ms. Doe has occupied both and Ms. Roe has held an exempt position. Ms. Roe's employment experience falls within the clerical and technical category, and Ms. Doe's within professional and managerial. These plaintiffs also typify the educational requirements of each category in that Ms. Roe has completed a high school education, while Ms. Doe held a college degree during her active employment with FCNB. In addition plaintiffs' attorney, pursuant to Local Rule 6, has interviewed other members of the potential class and represents to the court that "plaintiffs claims are the same or similar as those of other class members." Plaintiffs' Memorandum in Support of Class Certification, at 10.

While plaintiffs' individual claims may vary in specific factual circumstances they will be typical of the class which has allegedly suffered injury from the same animus.

██ *Adequacy of Representation*: The requirement of Rule 23(a)(4) that the named plaintiffs "fairly and adequately

protect the interests of the class," consists of two factors:

(a) the plaintiffs attorney must be qualified, experienced and generally able to conduct the proposed litigation; and

(b) the plaintiff must not have interests antagonistic to those of the class. *Eisen v. Carlisle & Jacqueline*, 391 F.2d 555, 562 (2nd Cir. 1968) (Eisen II).

*Wetzel v. Liberty Mutual Insurance Co.*, 508 F.2d 239, 247 (3rd Cir. 1975), cert. denied 421 U.S. 1011, 95 S.Ct. 2415, 44 L.Ed.2d 679 (1975).

 Defendants challenge the adequacy of these plaintiffs as class representatives on the basis that one has resigned her employment at FCNB and does not seek reinstatement and the other is on leave of absence. The issue of plaintiffs' current employee status has been resolved long ago in the federal courts.

Class actions on behalf of past, present, and future employees have been maintained by individuals who are no longer themselves employed. (citations omitted).

*Wilhite v. South Central Bell Tel. & Tel. Co.*, 426 F.Supp. 61 (E.D.La.1976). In addition, both Ms. Roe and Ms. Doe have sought anonymity in order to avoid any retaliation or adverse effects on their future prospects for employment. The fact that Ms. Roe does not seek re-employment with FCNB and that Ms. Doe has acquired additional education further frees them from any constraints in vigorously prosecuting this lawsuit. *See Wetzel*, supra.

The Supreme Court in *Rodriguez*, supra, and the Fifth Circuit in *Satterwhite v. City of Greenville*, 578 F.2d 987 (1978), discuss adequacy of representation in terms of the individual plaintiff's "nexus" with the class he or she claims to represent. In *Rodriguez* the plaintiffs' individual claims were found to be without merit prior to class certification by the Fifth Circuit. The district court had found these plaintiffs lacked the qualifications for the jobs they sought. "Thus, they could have suffered no injury as a result of the alleged discriminatory practices, and they were, therefore, simply not eligible to represent a class of persons who did allegedly suffer injury." *Rodriguez*, 431 U.S., at 403, 97 S.Ct., at 1897, 52 L.Ed.2d at 462. Furthermore, the evidence in that case strongly indicated the plaintiffs would not be proper representatives as shown by their failure to move for class certification before trial and in their apparent conflict with other class members.

In the instant case there has been no determination on the merits of plaintiffs claims and there is no evidence of conflicting interests. Plaintiffs' allegations, and evidence show the existence of a class of females who allegedly have been and are being discriminated against on the basis of their sex in the terms and conditions of their employment.

In *Satterwhite*, though the plaintiff moved for certification before trial, certification was denied. At trial it was determined that Ms. Satterwhite had never been discriminated against and was never employed by the defendants. Therefore, she "never suffered any legally cognizable injury either in common with the class or otherwise. *Satterwhite* at p. 991.

The case now before this court is in an entirely different posture than either *Rodriguez* or *Satterwhite*. There has not been any determination on the merits of these individuals' claims. Ms. Doe and Ms. Roe have both been employed by the defendant FCNB and both claim that the injuries they suffered resulted from an "across the board" policy of discrimination on the basis of sex. Even though Ms. Roe has not been employed there for more than three years that is but one of many factors to consider in determining whether she has the requisite nexus with the class of past, present, and future employees she seeks to represent. As an alleged victim of discrimination suffered while she was employed by FCNB Ms. Roe has a present and continuing interest in this litigation. Whatever harm she suffered while employed does not evaporate when she severs her employment. She continues to suffer the alleged loss of

compensation, experience, and training resulting from any discriminatory practices. She has alleged that these same practices continued after she left FCNB and will continue without appropriate injunctive relief.

Ms. Doe is still employed at FCNB though on leave of absence for over a year. She was actively employed at FCNB on a daily basis until 1977, three years after Ms. Roe left. Ms. Doe alleges that a discriminatory policy was in effect, while she was actively employed, that it is still in effect, and that it will continue until injunctive relief is granted.

Whether or not there has been, is, and will continue to be an across the board policy in effect throughout these defendant establishments, and whether or not these plaintiffs and/or the class they represent has been injured by their employers' policies is yet to be determined at a trial on the merits. As to the question of liability these plaintiffs are members of the class and maintain a sufficient homogeneity of interests with the class. *Satterwhite* at 993 n. 8.

There is no contest with regard to counsel's competency to conduct the proposed litigation, and the court finds counsel's ability and experience well suited to this litigation.

### Rule 23(b)(2)

Having determined that all the prerequisites of Rule 23(a) are met, the court finds that this action is particularly suited to be maintained as a (b)(2) class action.

The allegations are that the defendants, through a common policy, have "acted or refused to act on grounds generally applicable to the class." Furthermore, injunctive relief with respect to the class as a whole would be appropriate.

Plaintiffs also seek damages in the form of back pay for themselves and other members of the class who were formerly or who are currently employees of the defendants. A claim for monetary relief, in addition to injunctive relief does not prohibit the maintenance of this suit as a (b)(2) class action. *Wetzel*, supra, at 251.

Notice to the class is not required when the class is certified under (b)(2). Plaintiffs, however, have proposed that notice to the class of the nature and pendency of this lawsuit, which explains class members ability to "opt out", be posted on defendants' premises, distributed in defendants' in-house newsletter and published in the Houston Post and Chronicle. The court finds such notice reasonable as proposed in that it fairly and adequately notifies the class at a minimal cost to plaintiffs, who shall bear the expense of such notice.

At the present time, the court does not find on the evidence before it, that division of this class into subclasses is necessary.

### Summary of Findings

In conclusion, the court finds that this action should be certified as a class action under Rule 23(b)(2) in that the class is so numerous that joinder of all members is impracticable; there are questions of law or fact common to the class; the claims of the representative parties are typical of the claims of the class; and the representative parties will fairly and adequately protect the interests of the class.

The class as certified shall consist of all current and future female employees of all defendants, all former female employees of all defendants who left defendants' employ on or after May 3, 1974, all future female applicants of all defendants, and all former unsuccessful female applicants of all defendants who applied or who were rejected for employment by any of these defendants on or after May 3, 1974.

The court further finds the allegations against these defendants are such that they are alleged to have acted or refused to act on grounds generally applicable to the class as a whole and that injunctive relief would be appropriate. Furthermore, the court finds that notice to the class, in the manner set out above, would be appropriate and desirable in the interests of expediting and managing this lawsuit as a class action.

Accordingly, it is hereby ORDERED, AD-JUDGED, and DECREED that plaintiff's motion to maintain this action as a class action under Rule 23(b)(2) be, and the same is GRANTED.

It is further ORDERED that plaintiffs' shall notify the class members in the manner set forth in this memorandum, the expense for said notice to be borne by the plaintiffs.

It is further ORDERED that the parties to this lawsuit shall commence discovery on the merits in preparation for an expeditious trial of this case.