[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
Plaintiff's Motion for Class Certification was brought pursuant to two different but overlapping sources of authority: Counts I through IV are based on Practice Book 87 and 88; and Count V is based on provisions of the Connecticut Unfair Trade Practices Act, codified at 42-110a, et seq., of the Connecticut General Statutes.
The Practice Book imposes six requirements for the certification of a class action: (1) that the class is so numerous that joinder of all members is impracticable: (2) that there are questions of law or fact common to the class, (3) that the claims or defenses of the representative parties are typical of the claims or defenses of the class: (4) that the representative parties will fairly and adequately protect the interests of the class. (5) that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members; and (6) that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. Practice Book 87, 88. Pursuant to General Statute 42-110g(b), persons entitled to bring a CUTPA action "may, pursuant to rules established by the judges of the superior court, bring a class CT Page 2284 action" on behalf of themselves and other similarly situated persons. The requirements for class certification under CUTPA are, therefore, identical to the six set forth in the Practice Book. The proposed class of 250-500 persons fulfills all six requirements.
A. Plaintiff's Class Is So Numerous That Joinder of All Members is Impracticable.
The first requirement of class certification is that the proposed class must be "so numerous that joinder of all members is impracticable." Practice Book 87. This numerosity requirement neither defines an absolute minimal numerical size nor demands that joinder of all members be shown to be impossible. As long as the class proponents are able to present a reasonable estimate of the number of class members, and as long as joinder of them all is shown to be impracticable, the numerosity requirement will be found to be satisfied. Campbell v. New Milford Board of Education, 36 Conn. Sup. 357, 361
(1980). While certification may not be based on "mere speculation," a party seeking certification need not show the exact size of the class so long as the court can draw reasonable inferences from the facts before it as to the approximate size of the class and the infeasibility of joinder. Id.; Kornick v. Talley, 86 F.R.D. 715 (N.D.Ga 1980); Garcia v. Rush-Presbyterian-St. Luke's Medical Center, 80 F.R.D. 254, 268
(N.D.Ill. 1978).
The deposition of defendant's former officers and defendant's responses to plaintiff's interrogatories and requests for production, demonstrate that the number of class members is between 250 and 500. Such a reasonable estimate of the number of class members, under circumstances where a more precise determination could only be made upon an examination of defendant's records, which, at the time of the hearings on this issue, had not been made available for inspection by defendant. satisfies the numerosity requirement of Practice Book 87. See Campbell v. New Milford Board of Education, 36 Conn. Sup. 357,361 (1980) (estimate of class size of between 450 to 800 satisfied numerosity requirement.)
The plaintiff representative's proposed class is composed of all persons who, as mortgagors, entered into mortgage rider agreements with defendant containing variable interest rate provisions identical in all material respects to those contained in the mortgage rider agreement entered into by and between plaintiff Crowley and defendant.
B. There Are Questions of Law And Fact Common To The Class. CT Page 2285 The second requirement for class certification under Practice Book 87 is the existence of "questions of law or fact common to the class." This requirement of commonality does not require that all issues of law or fact be identical for every class member. Rather, it requires only that some common questions exist. Campbell v. New Milford Board of Education,36 Conn. Sup. at 362. "Where the question of basic liability can be readily established by common issues the case is appropriate for class action." Id. In short, commonality is satisfied where the question of law linking the class members is substantially related to the resolution of the litigation even though the individuals are not identically situated. Id. Questions of law and fact common to the class include the following: (a) whether defendant breached its agreements with the class members in regard to the variable interest rate provisions of their mortgage rider agreements by ignoring the "bought down" interest rates in determining the "market rate" of interest: (b) whether defendant had formally established policy for ignoring "bought down" interest rates from the determination of the "market rate" (c) what defendant's established procedures were for determining annual rate changes; and (d) whether defendant made materially false representations to the class members in computer generated notices sent to those members in regard to the variable interest rate provisions in their mortgage rider agreements. These fundamental questions pertaining to defendant's inclusion or exclusion of "bought down" interest rates in its determination of the "market rate" of interest applicable to interest rate adjustments are central to the resolution of the claim of each member of the class that his or her loan was improperly adjusted and are sufficient to satisfy the commonality requirement.
While there may be individual questions regarding damages for each of the class members, the determination of the liability of defendant turns almost exclusively on questions pertaining to the established practices of defendant in determining the annual interest rate changes for borrowers who had entered into variable rate mortgages keyed to the bank's internal "market rate." The defendant has identified two factors as differing among the members are (1) whether the members have paid off their loans; and (2) whether the members protested the nature of the interest rate adjustments at the time that they paid off their loans. While these factors — to the extent that they can be shown to exist — might be relevant in determining the proper scope of individual relief to be awarded, they have no bearing whatsoever on the ultimate and shared questions in this case pertaining to the bank's failure to look to the proper rates in determining the "market rate" for purposes of adjusting the interest rate of variable interest rate mortgages. The refusal to look to rates such as CT Page 2286 "bought-down" rates, common to the claims of all class members, constitutes a sufficient nexus to enable the plaintiff representative to represent other class members suffering from the same practice. See Eisen v. Carlisle and Jacquelin,391 F.2d 555 (2d Cir. 1968) (plaintiff's claims against brokerage firms for violations of the Sherman Act for application of unlawful differential were deemed typical even though there were varying fact patterns underlying each class member's transactions with the firms, since the same differential was charged to all class members), 7A Wright, Miller Kane, Federal Practice and Procedure, 1764, pp. 235-36.
Similarly, the potential difference in negotiating postures of those class members who have paid off their loans as opposed to those who have not, does not present a situation where the plaintiff representative's interests can be said to be atypical or in conflict with those of the other class members. See Muth v. Deckert, Price Rhoads, 70 F.R.D. at 605. Mere speculation as to conflicts which might arise in the class provides no sound basis for foreclosing a class action, especially, where as here, there is a common interest or nexus between the class members in obtaining relief from the bank for its improper calculation of the interest rates paid on the class members' mortgages.
Even assuming, however, that some problems may later arise in settlement negotiations because of the different factual postures of the class members, such problems would not render this action unmanageable. At the appropriate time, this Court may exercise its ample powers to redefine the class and/or divide the class into subclasses as may be necessary to deal with any real conflicts of interest asserted, as opposed to speculative ones raised, not by an interested member of the class, but by the defendant. See id. at 604-05.
C. The Claims of The Representative Parties Are Typical of The Claims of The Class.
The principles governing the determination as to whether or not the claims of the representative party are typical of the claims of the class are similar to those discussed in connection with the requirement of commonality. Campbell v. New Milford Board of Education, 36 Conn. Sup. at 365. Thus, the requirement of typicality is satisfied when the claims of the representative party arise "out of the same event or practice or course of conduct that gives rise to the claims of the class members and [are] based on the same legal or remedial theory." Id., quoting Newbury, Class Actions, 1115c, p. 186. The presence of factual variations is generally immaterial unless those variations render the representative party's claims markedly different from those of the class. Id.; Wofford v. CT Page 2287 Safeway Stores, Inc.; 78 F.R.D. 460, 489 (N.D.Cal, 1978). Differences in the amount of damages do not make a representative's claims atypical. Wolgin v. Magic Marker Corp.,82 F.R.D. 168, (E.D.Pa. 1979).
Here there is nothing unique or atypical about the plaintiff representative's legal claims or factual situation. As Raymond C. LaGace testified at his deposition, defendant, at the direction of its asset and liability committee, did not look to "bought-down" rates in determining the "market rate" for purposes of adjusting the interest rate of variable interest rate loans (LaGace, p. 40-41). Thus, as a matter of policy at the bank. "bought down" rates were excluded from the bank's determination of "market rate" for the variable interest rate loans of all members of the class. And, while rate adjustments may have been done on a case-by-case basis, the failure to look to "bought-down" rates in determining the "market rate" for those adjustments was a factual scenario common to all members of the class, including the plaintiff representative. Thus the bank's failure to look to "bought-down" rates in the plaintiff representative's case was typical of the bank's conduct with respect to the class members. This conclusion is not altered by the fact that the interest rate adjustments of some members of the class may have differed from each other depending on the particular loan to value ratio of the loan and the particular method of repayment used. To be entitled to class representation, however, the representative plaintiff need only prove a "sufficient nexus to enable [him] to represent other class members suffering from [even] different practices motivated by the same policies." Doe v. First City Bancorporation of Texas, Inc., 81 F.R.D. 562, 569 (S.D.Tex. 1978), quoting Payne v. Travenol Laboratories, 565 F.2d 895, 900
(5th Cir. 1978). The existence of a policy to exclude consideration of "bought down" rates from the determinations of the adjustments of the interest rates for the loans of all class members establishes just such a nexus. Regardless of other factors, defendant's policy and practice of excluding "bought-down" rates from its calculation of the "market rate" had the same effect on the interest rate adjustments for the mortgages of all class members, i.e. it eliminated from consideration the lowest interest rates charged by the bank to its new customers.
A different conclusion is not warranted simply because defendant might elect at some later date to seek to divide the class by offering concessions or favorable refinancing to its current borrowers, while withholding such offers or terms to former borrowers, such as the class representative. Mere speculation as to conflicts which might arise in the class provides no sound basis for foreclosing a class action, CT Page 2288 especially where, as here, there is a common interest or nexus between the class members in obtaining relief from the bank for its improper calculation of the interest rates paid on the class members' mortgages. Moreover, should problems later arise in settlement negotiations because of the different factual postures of the class members, such problems would not render this action unmanageable inasmuch as this Court may exercise its ample powers to redefine or divide the class into subclasses as may be necessary to deal with a real, rather than a speculative conflict of interest. Muth v. Dechert, Price Rhoades,70 F.R.D. 602, 604-05 (E.D.Pa 1976).
Nor is a different conclusion warranted due to defendant's expressed intention to present evidence of the commercial reasonableness of each interest rate adjustment for each borrower. As this Court found in sustaining plaintiff's objection to the admissibility of defendant's proposed expert witness at the hearing on class certification, such evidence presents a defense on the merits and is clearly irrelevant to the issues of contractual interpretation central to the claim of all of the class members.
D. The Class Representative Will Fairly And Adequately Protect The Interests Of The Class. Practice Book 87.
As a result of his extensive work in the trading of securities and corporate finance areas, and his familiarity with variable rate instruments and the methods used to adjust the rates of such instruments, the class representative is uniquely qualified to be the representative of this class. He has the necessary resources and has expressed his willingness to pay the costs associated with this litigation. Similarly, plaintiff's counsel has the necessary experience in complex litigation to pursue the present litigation. Although various delays, some of which were attributable to defendant's own dilatory discovery tactics, did occur prior to the filing of the Motion for Class Certification, those delays did not result in any prejudice to defendant.
The defendant has raised as its basis for argument against the class representative his alleged failure to "vigorously prosecute" the action and, in particular, plaintiff's delay in filing his Motion for Class Certification. Unquestionably, the timing of a plaintiff representative's filing of a Motion for Class Certification may, in certain instances, be a factor in determining the adequacy of the representation being afforded by the class representative and his attorney to the class. East Texas Motor Freight System, Inc. v. Rodriguez, 431 U.S. 395, 405
(1977). Mere untimeliness of such a motion, however, in and of itself, does not justify denying class treatment to a lawsuit. CT Page 2289 Zeltser v. Hunt, 90 F.R.D. 65 (S.D.N.Y. 1981); Muth v. Dechert, Price Rhoads, 70 F.R.D. 602, 606 (E.D.Pa. 1976); 7B Wright, Miller Kane, Federal Practice and Procedure, 1785, pp. 94-95. Absent a showing of prejudice to defendant or to members of the proposed class, it is inappropriate to deny class certification solely on the basis of the timeliness of the filing of the motion, particularly where, as here, there is otherwise no evidence that the plaintiff representative or his counsel would be unable to represent the interests of the proposed class adequately. Muth v. Dechert, Price Rhoads, 70 F.R.D. at 606: McCarthy v. Kleindienst, 741 F.2d 1406 1423 (D.C. Cir. 1984) (Mikva, J. dissenting). Moreover, where, as in Connecticut, there is no rule requiring the filing of a class certification motion within any specific period of time (unlike many federal court districts which have local rules establishing such filing deadlines), denial of class certification solely on the basis of the timing of the plaintiff representative's filing of his motion for class certification cannot be justified.
The requirement that an untimely motion be shown to be prejudicial to the defendant or to the proposed class is fatal to defendant's timeliness argument in this case. Feigning horror at the prospects of defending a "hydra-headed monster" class action suit rather than the "minor nuisance" of an individual action by a single former customer, defendant contends that it will now have to reconstruct facts involving a ten-year old loan program administered by individuals who no longer work for the bank and will have to review thousands of documents in preparation for trial. This need to assemble facts and prepare for trial, however, is clearly independent of the timing of the motion for class certification. Defendant has been fully aware throughout the discovery proceedings which have taken place over the past four years that it would have to search its files for documents and information relating to its adjustable rate mortgage loan programs. Had the Motion for Class Certification been filed and granted immediately upon the commencement of this action — a possibility which was not practicable in view of the obvious need for discovery to determine the size and scope of the proposed class — defendant would still have had to prepare itself for a complex trial and would still have been faced with the prospect of presenting evidence through witnesses no longer employed by the bank. Indeed, defendant has failed to articulate any harm that has resulted because of the timing of the motion for class certification. Under these circumstances, the adequate representation requirement set forth in Practice Book 87 is clearly satisfied.
E. Questions of Law and Fact Common to the Members of the Class Predominate Over Any Questions Affecting Only CT Page 2290 Individual Members. Practice Book 88.
As previously discussed, the major thrust of this action is a challenge to defendant's policy and practice of determining the "market rate" of interest to be used in calculating annual adjustments of interest rates for variable interest rate mortgages. In particular, this action challenges defendant's failure to consider "bought down" rates in arriving at the "market rate" used in the adjustments. Although other facts, such as the principal amount of each mortgage, the length of time each mortgage loan remained outstanding, and the method of repayment used in connection with the loan, all involve individual considerations which will affect the amount of damages to be awarded to the class members, such individual questions of a purely mechanical nature are of secondary importance to the predominant issue involving the bank's consideration of "bought down" interest rates in its adjustments of interest rates on mortgage loans. See Blackie v. Barrack,524 F.2d 891, 905 (7th Cir. 1977). Thus, the predominance requirement set forth in Practice Book 88 is clearly satisfied in this case.
F. A Class Action Is Superior To Other Available Methods For The Fair And Efficient Adjudication Of The Controversy.
The sixth and final requirement of class certification is that a class action must be "superior to other available methods for the fair and efficient adjudication of the controversy." Practice Book 88. Thus, if the disputes which the plaintiff representative seeks to have litigated in a class action could be adjudicated more efficiently and effectively in another forum or in another manner — such as individual suits, joinder of parties, administrative remedies or "test case" litigation — then class certification should be denied. Campbell v. New Milford Board of Education, 36 Conn. Sup. at 369; 7 Wright Miller. Federal Practice and Procedure, 1759, P. 59.
Where, as here, common issues predominate and parties are numerous, the superiority of a class action over individual suits is obvious. Campbell v. New Milford Board of Education,36 Conn. Sup. at 370. Some of the reasons for such superiority include the following: (1) the economic injuries to some of the proposed class members may be too miniscule to justify the commencement of independent actions by those members; (2) the proliferation of lawsuits that might otherwise result will be minimized by class action; (3) duplicative efforts by the judiciary and the litigants can be eliminated by use of a class action; (4) a class action will obviate the need for duplicative litigation expenses and attorney's fees; (5) if a class is certified, the defendant will be relieved from the burden of CT Page 2291 defending numerous lawsuits in diverse geographical locations: and (6) resolution of the disputes in a single action will avoid inconsistent judicial decisions. Id.; In re Sugar Industry Antitrust Litigation, 73 F.R.D. 322, 358 (E.D.Pa. 1976). These reasons are applicable to the present case and warrant the conclusion that a class action is superior to the commencement of as many as 250 to 500 individual lawsuits involving the same legal issues against the same defendant.
KATZ, JUDGE