Catherine M. BURWELL et al.

v.

EASTERN AIR LINES, INC., et al.

Civ. A. No. 74–0418–R.

United States District Court,
E. D. Virginia,
Richmond Division.

May 16, 1975.

Robert B. Wallace, Lawyer's Committee for Civil Rights, Washington, D. C., for plaintiffs.

Francis V. Lowden, Jr., Paul M. Thompson, Richmond, Va., A. Andrew Giangreco, Alexandria, Va., for defendants.

## MEMORANDUM

MERHIGE, District Judge.

Plaintiffs, Catherine M. Burwell and Jean H. Proctor, are female flight attendants employed by Eastern Airlines, Inc., who bring this class action against Eastern and their past and present collective bargaining representatives, Airline Stewards and Stewardesses Association, Local 550, and Air Transport Division, Local 553, Transport Workers Union of America, AFL–CIO (hereinafter "Locals 550 and 553" or "the Union"), pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., as amended by the Equal Employment Opportunity Act of 1972. They allege that Eastern's maternity leave policy discriminates against them on the basis of their sex and seek declaratory, injunctive and other appropriate relief. Jurisdiction of the Court is invoked pursuant to 42 U.S.C. § 2000e–5(f)(3) and 28 U.S.C. §§ 1332, 1337 and 1343(4).

This matter is presently before the Court upon defendants' motions to dismiss or, in the alternative, for summary judgment. Also before the Court are defendant Eastern's motion for a protective order as to trade secrets and plaintiffs' motion to compel answers to interrogatories and requests for production of documents. Upon the briefs, affidavits and oral arguments of the parties in support of and in opposition to these motions, the Court deems them ripe for disposition.

I.

The relevant facts alleged by plaintiffs in this matter are as follows: Plaintiff Burwell was first employed by Eastern as a flight attendant in October of 1964. On May 13, 1970, pursuant to Eastern's mandatory policy, she informed Eastern that she was pregnant and was thereupon terminated without pay, accrual of seniority, insurance benefits and other privileges as an Eastern employee. After delivering her child, she returned to work on December 29, 1970. As a result of her termination, plaintiff Burwell lost approximately ten positions on the seniority roster. Also, prior to her re-employment, she received no salary from Eastern and was required to pay $750.00 in medical bills as well as the total amount of the insurance premiums to maintain the Eastern sponsored insurance plan. From December 1970 to July 1974, she was outbid for flights and was unable to maintain the same schedule or to work the desired number of hours because of her lower position on the seniority roster.

On June 14, 1972, plaintiff Proctor was terminated by Eastern as a flight attendant as a result of her being pregnant. Her pregnancy terminated in the birth of a child in September of 1972 and she exercised her re-employment rights with Eastern on or about November 26, 1972. Plaintiff Proctor alleges that as a result of her termination she, too, suffered all of the losses and injuries set forth by plaintiff Burwell during the five and one-half month period prior to her re-employment.

On April 3, 1973, another Eastern female flight attendant, one Patricia Healen, filed suit in the United States District Court for the Northern District of Georgia against Eastern and the Union on behalf of herself and a class consisting of flight attendants based at Eastern's Atlanta facility. The suit complained of some of the same discriminatory policies and practices challenged in the instant matter.

On July 1, 1973, defendants Eastern and the Union entered into a collective bargaining agreement that provided for the restoration of seniority for those persons who had lost seniority after July 1, 1972 under Eastern's maternity policy.

On August 8, 1973, plaintiff Burwell filed charges with the Equal Employment Opportunity Commission (hereinafter "EEOC") against Eastern and Local 550. In her complaint, she stated:

> I and all other women at Eastern Air Lines are being discriminated against because of our sex in violation of Title VII of the Civil Rights Act of 1964. In 1970 I was out seven months because of pregnancy and child birth. During that period I was not permitted to use my sick leave or accrue seniority. It is the policy of the company to permit all employees to have leave of absences due to illness up to three years while accruing seniority, but only in the case of maternity are you required to take leave without getting sick leave. Stewardesses must go on unpaid maternity leave as soon as they know of their pregnancy or they will be fired. Maternity is the only type of disability treated this way. The company has an agreement with the all-male pilots union that provides for five years leave of absence while accruing seniority. I believe this action is continuing because my loss of seniority has kept me from better runs. I awaited the outcome of the new contract, but the new provisions disbanding this procedure only applied retroactively to July 1, 1972. Since seniority controls overtime and base salary, I am affected every day by this policy. There are many other policies that affect all stewardesses that should be investigated.

After filing her charges, plaintiff Burwell again became pregnant during the fall of 1973. She suffered a miscarriage, however, in November of 1973 and was out of work for approximately three weeks.

On April 12, 1974, an order was entered in Healen v. Eastern Air Lines, Inc., No. 18,097 (N.D.Ga.), approving a compromise settlement whereby Eastern, in return for plaintiffs' agreement to dismiss with prejudice all claims, agreed to grant retroactive seniority accrual to all flight attendants system-wide for their pre-July 1, 1972 maternity leave periods. Following this settlement, in June of 1974, Eastern announced that it would generally reinstate seniority lost due to pregnancy during the period prior to July 1, 1972. Plaintiffs here allege, however, that Eastern did not compensate female flight attendants for lost earnings and other losses which they had suffered as a result of Eastern's previous denial of seniority.

On July 1, 1974, plaintiff Burwell requested and was issued a Notice of Right to Sue letter by the EEOC and on September 27, 1974 this suit was filed. In their complaint, plaintiffs allege the aforementioned facts. They also state that, at the time of suit, plaintiff Proctor was pregnant and had been terminated on September 3, 1974 as an Eastern flight attendant although she was able to perform fully and properly all of her duties and desired to continue working. Plaintiffs further allege that Eastern's current policies and practices with regard to maternity leave discriminate against them in that the same policies do not apply to other types of interruption in employment, including other types of physical incapacity or illness. They contend that Eastern's practice includes, but is not limited to, the following specific discriminatory procedures:

1. Terminating female flight attendants as soon as pregnancy is known, without regard to differing individual abilities to work;

2. Denying employees terminated because of pregnancy the following benefits: (a) the use of sick leave or vacation time; (b) accrual of sick leave and of vacation and seniority credit; (c) the disability benefits provided for employees

unable to work because of non-occupational accident or sickness; and (d) other employment benefits;

3. Denying employees terminated because of pregnancy the use of Eastern identification cards and passes on Eastern and other airlines and requiring that these documents, as well as uniforms and other work-related materials, be immediately surrendered to Eastern;

4. Denying employees who are re-employed after pregnancy termination accrual of sick leave credit at the same rate as applies when employees return from sick leave;

5. Requiring employees who wish to be re-employed after a pregnancy termination to pass an Eastern physical examination not required of employees returning from sick leave;

6. Requiring employees who wish to be re-employed after a pregnancy termination to complete a new employment application as though they had never been previously employed by Eastern, something not required of employees returning from any sort of leave;

7. Requiring employees terminated because of pregnancy to exercise their re-employment rights within ninety (90) days of the date of birth unless Eastern's physician certifies medical incapacity, and terminating those rights in any event after six months from the date of birth without regard for individual ability to return to work and notwithstanding that leaves of absence on account of sickness or injury or other circumstances are available for a period of three years;

8. Denying employees terminated because of pregnancy the opportunity to be transferred to non-flight positions, notwithstanding that such opportunities are available to employees who are unable to fly because of any other physical incapacity, injury or sickness;

9. Denying employees pregnancy benefits under a group medical insurance plan in amounts equal to the benefits paid for comparable non-pregnancy-related claims.

With regard to defendant Locals 550 and 553, plaintiffs allege that they have participated with Eastern in discriminating against them and the class they represent by negotiating and perpetuating a collective bargaining agreement that instituted and maintained the employment practices complained of, by actively cooperating with Eastern in maintaining and enforcing those employment practices and by failing to oppose them.

Plaintiffs further contend that the employment practices which they have described constitute intentional violations of their rights secured by Title VII of the Civil Rights Act of 1964, as amended, and that they have suffered and continue to suffer serious and irreparable injury as a consequence of those violations alleged. Plaintiffs ask the Court to declare the enumerated employment practices to be unlawful, to permanently enjoin the defendants from engaging in them, to grant them compensatory relief, including compensatory sick leave, vacation and seniority credit, back pay, sick pay, disability pay, added air transportation charges, disability insurance costs, and compensatory medical benefits, and to award them costs and reasonable attorney's fees.

II.

As previously noted, defendant Eastern has moved the Court to dismiss the complaint or, in the alternative, to grant summary judgment in its favor on the grounds that the Court lacks jurisdiction over the subject matter of this suit, since both plaintiffs allegedly have failed to satisfy the jurisdictional requirements of Title VII. As to plaintiff Proctor's claim, Eastern argues that it must be dismissed since she has never

filed a charge with the EEOC and, consequently, never received the requisite notice of right to sue.

With regard to plaintiff Burwell, Eastern contends that her charge was not timely filed with the EEOC in that the events which constitute the basis for her complaint, namely her maternity leave of absence, occurred nearly three years prior to Eastern's receipt of a notice of charge of employment discrimination, dated November 8, 1973. Moreover, Eastern alleges that the notice served upon it alleged sex discrimination of a general nature and contained no indication that its maternity leave policies were the subject of Burwell's charge, that it never received a copy of the EEOC's notice to Burwell of her right to sue, and that neither the alleged charge nor the notice of right to sue were attached to the complaint filed in this action. Eastern also contends that the issue of plaintiffs' loss of seniority is now moot as a result of the settlement in Healen v. Eastern Airlines, Inc., *supra*, No. 18,097 (N.D.Ga. April 12, 1974), and that her allegations that her sick time and vacation accrual were adversely affected during her maternity leave do not offer grounds for a charge of continuing discrimination. Finally, Eastern challenges plaintiffs' invocation of this Court's jurisdiction pursuant to 28 U.S.C. §§ 1332, 1337 and 1343(4).

Initially, the Court notes that nearly all of the questions raised by Eastern in its motion to dismiss plaintiff Burwell's claim were among those placed in issue by Eastern and rejected by the Court in Healen v. Eastern Airlines, Inc., 8 FEP Cases 917 (N.D.Ga.1973), prior to the settlement of that action. There, the plaintiff, as previously noted, was a female flight attendant with Eastern who had been on a mandatory maternity leave of absence from June 3, 1971 through January 27, 1972. On March 10, 1972, 280 days after commencement of her leave and 41 days after her return to active service, she filed a charge with the EEOC alleging that Eastern engaged in a continuing practice of sex discrimination in subjecting her and other female employees to adverse terms and conditions. Her charge was amended on March 30, 1972, to more specifically allege discrimination in the disallowance of seniority accrual during maternity leaves. She subsequently received a notice of right to sue from the EEOC on February 27, 1973 and instituted her Title VII action on April 3, 1973.

In moving the Court to dismiss Healen's complaint, Eastern alleged, *inter alia*, that the complaint was facially deficient in that it only generally alleged "all conditions precedent to the institution of this suit have been fulfilled." Eastern also contended that the suit was jurisdictionally barred by Healen's failure to file a timely charge with the EEOC, arguing that the discriminatory practice alleged occurred, if at all, on June 3, 1971, the day on which Healen commenced her maternity leave, and that the action was otherwise barred by the EEOC's failure to serve it notice of the charge or to attempt conciliation of the claims.

■ Applying to the instant matter the principles enunciated in Judge Henderson's thorough and well-reasoned opinion in *Healen*, the Court finds that plaintiffs' complaint adequately alleges compliance with the jurisdictional prerequisites to a Title VII suit in that it states that Burwell filed charges with the EEOC on August 8, 1973, requested and was issued a notice of right to sue on July 1, 1974, and filed this action within ninety days thereafter on September 27, 1974. Furthermore, while plaintiffs did not annex a copy of the notice of right to sue to their complaint —and there is no requirement that they do so—they did recently file such a copy with the Court on April 25, 1975.

■■ As to the timeliness of Burwell's charge to the EEOC, the Court notes that it may well be true that the limitation provision of § 706(e) of Title VII of the Civil Rights Act of 1964, as

amended, 42 U.S.C. § 2000e–5(e),[1] would bar her claim had she challenged nothing more than the practices and procedures incident to her maternity leave of absence in 1970. A fair reading of her charge to the EEOC as well as her complaint in the instant matter, however, indicates that her attack is considerably more broadly based. As the Court views her allegations, they are directed toward both the continuing effect of her absence on her employment status and the present maintenance by Eastern of its pregnancy policies with regard to female flight attendants. Thus, although plaintiff Burwell's charge and complaint detailed the facts surrounding her prior forced maternity leave,[2] her charges that an employment practice continues to exist and continues to discriminate against her are sufficient to constitute a timely filing with the EEOC. Macklin v. Spector Freight Systems, Inc., 156 U.S.App.D.C. 69, 478 F.2d 979, 987 (1973); Bartmess v. Drewrys U. S. A., Inc., 444 F.2d 1186, 1188 (7th Cir. 1971); Austin v. Reynolds Metals Co., 327 F.Supp. 1145, 1152 (E.D.Va.1970).

■■ Similarly, the Court finds no merit to Eastern's claim that it was never served a copy by the EEOC of its notice of right to sue since there is no statutory requirement that a copy be so served. In addition, as to Eastern's argument that this action is barred because the EEOC, while providing it notice pursuant to 42 U.S.C. § 2000e–5(b) that Burwell had filed a charge, did not

adequately apprise it of the precise nature of the charge, the Court concludes that this contention is insufficient to defeat plaintiffs' right to bring this action. For, to quote Judge Henderson in *Healen*, where Eastern's contention was that it had been provided no notice whatsoever of her EEOC charge:

> [F]ailure of the EEOC to comply with the notice requirements should not be determinative of the individual complainant's rights. Although the administrative procedures directed toward conciliation of the discrimination charges are a central part of the Title VII scheme, the individual's right to bring a statutorily conferred right of action should not depend upon doing certain acts beyond his knowledge or control. By any measure, the due process rights of the plaintiff must prevail. She has done everything within her power to bring this claim, and that is sufficient. 8 FEP Cases at 922.

■ Finally, with regard to Eastern's assertion that plaintiff Proctor's claim must be dismissed for her failure to file a charge with the EEOC, it has long been recognized that "it is not necessary that members of the class bring a charge with the EEOC as a prerequisite to joining as co-plaintiffs in the litigation." Oatis v. Crown Zellerbach Corp., 398 F.2d 496 (5th Cir. 1968). Since the Court finds that Proctor is clearly a member of the class represented by plaintiff Burwell and that she asserts

---

1. Although not essential to the disposition of this issue in light of the Court's finding that the charges adequately allege continuing discrimination, the Court notes defendant Eastern is incorrect in its assertion that the ninety day limitation on filing charges with the EEOC in effect prior to the 1972 amendments to the Act would apply to Burwell's claim since the discriminatory act alleged took place in 1970. Rather, since § 14 of the amendments, Pub.L. No. 92–261, 86 Stat. 103, provides that they "shall be applicable with respect to charges pending with the Commission on the date of enactment [March 24, 1972] and all charges filed thereafter," and since plaintiff Burwell filed

her charge on August 8, 1973, the 180 day limitation in § 706(e) of the Act, as amended, would control.

2. In this sense, Burwell's charge and complaint are distinguishable from those filed in *Healen* which apparently made no mention of her previous absence. As the Court properly noted there, however, the particular facts of specific previous maternity leaves of absence become relevant only with respect to the propriety of such retroactive relief requested by the plaintiffs and need not be considered on a motion to dismiss. 8 FEP Cases at 921.

identical issues, her claim is properly before the Court. Thus, while Eastern is apparently correct in arguing that the issue of lost seniority is now moot as a result of the settlement reached in *Healen, supra,* No. 18,097 (N.D.Ga. Apr. 12, 1974), numerous other claims have been raised. Having concluded that both plaintiffs have met the requirements necessary to invoke this Court's jurisdiction pursuant to 42 U.S.C. § 2000e–5(f)(3), there is no need to consider plaintiffs' reliance on other jurisdictional statutes. Defendant Eastern's motion to dismiss or, in the alternative, for summary judgment will be denied.

### III.

Defendants Locals 550 and 553 have also moved the Court to dismiss the complaint or for summary judgment. They, too, assert that the plaintiffs have failed to meet the jurisdictional requirements of Title VII and that the issues which form the basis for this action are moot as to the class purportedly represented by plaintiffs. At least with regard to Local 550, which was named as a party by Burwell in her charge to the EEOC, the Court finds these contentions to be without merit for the reasons previously stated.

With regard to Local 553, however, the issue before the Court is somewhat more complex. On the basis of the affidavit of a former official of Local 550, it appears that Local 553 is one of three successor unions to Local 550 and that it was chartered in April of 1974 as the exclusive bargaining agent for flight attendants employed by Eastern Airlines and Southern Airways. It further appears that Local 553 had not been established at the time Burwell filed her charge with the EEOC in August of 1973. The question, therefore, presented to the Court for purposes of the instant motion is whether it is necessary for plaintiff to refile her charge with the EEOC and name the successor union.

The Court would note that this particular issue was recently addressed by the Sixth Circuit Court of Appeals in *Equal Employment Opportunity Commission v. MacMillan Bloedel Containers, Inc.,* 503 F.2d 1086 (1974). There, charges had been filed with the EEOC in 1969 alleging race and sex discrimination on the part of MacMillan's predecessor company, Flintkote Company, Hankins Container Division. In late 1972, after investigating the charges, the EEOC notified Flintkote that it had reasonable cause to believe that Flintkote had engaged in unlawful employment practices. Sometime thereafter, MacMillan took over the operation of Flintkote's plant and in July of 1973, the EEOC filed suit against MacMillan. The district court granted MacMillan's motion for summary judgment on the grounds that no charges had been filed against MacMillan prior to the institution of the suit.

On appeal, the Sixth Circuit reversed, noting first that while the nature and extent of liability must be determined on a case-by-case basis, the equities of the matter favor holding the successor company liable because it benefited from the discriminatory employment practices of its predecessor. With regard to the question of re-filing charges, the Court took note of both the filing requirement under 42 U.S.C. §§ 2000e–5(b) and (f)(1), as well as the statute of limitations set forth in 42 U.S.C. § 2000e–5(e), and stated:

> If the charging requirement is read in light of the statute of limitations, it is reasonable to assume, at least in the case of successor companies, that Congress only intended that a discriminatee be required to name those who were known to him and could have been charged within the period of limitations.

> This interpretation is logical and wholly consistent with the purposes of Title VII. The statutory mandate of informal settlement and conciliation is not served by requiring an aggrieved person to charge each new successor company. Such a requirement might encourage evasion through corporate

transfers. Even in the case of bona fide transfers of ownership, the delays which would be involved in refiling charges might be substantial and result in prejudice to the discriminatee. Furthermore, serious questions would be presented as to whether a charge filed against a successor would be barred by the statute of limitations. 503 F.2d at 1093.

Noting further the importance Title VII attaches to the avoidance of delay, the Court concluded:

> Since MacMillan had notice of the charge against Flintkote and had custody and control of all related documents, requiring "a second 'filing' by the aggrieved party . . . would serve no purpose other than the creation of an additional procedural technicality. Such technicalities are particularly inappropriate in a statutory scheme in which laymen, unassisted by trained lawyers, initiate the process." (Footnote omitted.) Love v. Pullman Co., 404 U.S. 522, 526–527, 92 S.Ct. 616, 619, 30 L.Ed.2d 679 (1972). 503 F.2d at 1093.

Although holding that summary judgment for MacMillan should not have been granted, the Court stated that MacMillan was entitled to a more definite statement as to the EEOC's allegations in its complaint that all conditions precedent to suit had been fulfilled since the record established that MacMillan had not been named in the charge.

With regard to the instant matter, plaintiffs' complaint does not allege nor do they now claim that charges were ever filed against Local 553. On the other hand, the Union does not contend either that it had no notice of Burwell's charge against Local 550 or that it was in any way prejudiced by Burwell's failure to renew her charge with the EEOC against Local 553 after it was chartered in April of 1974. Plaintiff Burwell's charge to the EEOC and the plaintiffs' complaint in this action do allege, however, a continuing pattern of discrimina-

tory conduct on the part of Eastern and their collective bargaining representatives. Since the Union's affidavit creates a genuine issue of material fact as to the successor status of Local 553 and, as a consequence, its potential liability to plaintiffs, Local 553's motion, in this regard, will be denied.

■ Local 550 also contends that it is not now amenable to suit in that it was completely dissolved as of July 1, 1974. In support, the Union has submitted the affidavit previously mentioned of its former officer which states that Local 550 was formerly the bargaining representative for cabin attendants employed by Trans World Airlines, American Airlines, Eastern Airlines and Southern Airways. The affiant further states that on April 1, 1974, the Executive Board of the Airline Stewards and Stewardesses Association passed a resolution accepting and approving the dissolution of Local 550 and establishing three separate locals of the Transport Workers Union, with Local 553 being issued a charter on April 15, 1974, as the exclusive bargaining representative for the flight attendants employed by Eastern and Southern. The affidavit also sets forth that by virtue of the new locals, and all administrative details having been fully discharged by Local 550, it was dissolved and ceased all of its functions by July 1, 1974.

Plaintiffs, in response, contend that they have not had an opportunity to verify Local 550's allegations or to establish that all assets of Local 550 have been dispersed. In light of plaintiffs' representations, the Court will, pursuant to Rule 56(f), Fed.R.Civ.P., continue Local 550's motion under advisement until plaintiffs have had a reasonable opportunity to conduct discovery with reference to this issue.

■ Finally, the Unions allege that this action does not comply with the prerequisites of Rule 23, Fed.R.Civ.P., because the claims raised are not common to a class. The Court would merely note

that such an allegation does not attack the sufficiency of the complaint, but rather goes to the Court's determination as to whether a class action should be declared. Prior to at least preliminary discovery, such an allegation is premature.

## IV.

Shortly after instituting this action, plaintiffs served extensive interrogatories and requests for the production of documents upon defendant Eastern. Thereafter, Eastern objected generally on the grounds that its motions to dismiss and for summary judgment were pending before the Court. In view of the denial of those motions this day, Eastern's objection on this basis is no longer of significance. Eastern also objects to all interrogatories and requests which seek information concerning female employees other than flight attendants on the grounds that the maternity leave policies for ground employees and for flight attendants differ from one another. Eastern contends, therefore, that information on other maternity leave policies and practices are not relevant to this action. It further objects specifically to nearly every interrogatory on the grounds that they are either burdensome, irrelevant, or related to trade secrets or to privileged communications.

In addition, Eastern has now served the plaintiffs with its own set of extensive interrogatories and requests for production. The plaintiffs, in turn, have objected to nearly all of these on grounds similar to those raised by Eastern in its own objections. In view of the apparently complex nature of the various discovery motions now pending and in an attempt to expedite the proceedings, the Court believes the interests of both parties would best be served by additional oral argument. Consequently, the Court will continue said motions under advisement and will set them down for hearing at the earliest possible date.

An appropriate order in accordance with this memorandum will issue.