ASSOCIATION OF FLIGHT ATTEND-ANTS, Debi L. McCulley, Avis Baird Moore, Olivia Martinez, Janice D. Blanchard, Hollace Starr White Hackler, Connie Nobles, Debra Schwartzenburg, Patricia Nobles, Brenda J. Wells, Sharon K. Appleton and Patricia K. Stovall, on behalf of themselves and others similarly situated, Plaintiffs,

v.

TEXAS INTERNATIONAL AIRLINES, INC. Defendant.

Civ. A. No. 76–H–2056.

United States District Court,
S. D. Texas,
Houston Division.

Jan. 5, 1981.

**54**

Chris Dixie, Dixie, Wolf & Dixie, Houston, Tex., Stephen B. Moldof, Cohen, Weiss & Simon, New York City, for plaintiffs and intervenor.

Michael K. Swan, Reynolds, Allen & Cook, Houston, Tex., L. Tyrone Holt, Durham, Gassman & Holt, Denver, Colo., for defendant.

## MEMORANDUM AND ORDER

SINGLETON, Chief Judge.

The Association of Flight Attendants (AFA), and individual Texas International Airlines, Inc. (TXI) flight attendants Debi McCulley, Avis Baird Moore, Olivia Martinez, Hollace Starr White Hackler, Connie Nobles, Debra Schwartzenburg, Patricia Nobles, Sharon Appleton, Brenda Wells and Patricia Stovall have brought this suit under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* challenging TXI's weight requirements and maternity leave policies as sex-based discrimination and seeking monetary damages, declaratory and injunctive relief.[1]

The individual flight attendants have brought this action on behalf of themselves and as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure. They now move for an Order certifying a class under Rule 23 regarding TXI's maternity leave policies.

The defendant, TXI, challenges certification of the class.

The Airline Pilots Association International Steward and Stewardess Division (ALPA), is the predecessor of the current collective bargaining representative to which the plaintiffs belong, the Association of Flight Attendants (AFA). On July 7, 1973, ALPA filed two charges of discrimination against TXI. The charges contested TXI's weight requirements and maternity leave policies. With regard to the maternity leave policies, ALPA claimed that TXI engaged in

unlawful employment practices of sex discrimination, on a continuing basis by maintaining and enforcing maternity leave of absence policies which discrimi-

---

1. AFA filed suit December 16, 1976, Civ.Act. No. 70–H–2056. Debi L. McCulley, Avis Baird Moore, Olivia Martinez, Hollace Starr White Hackler, and Connie Nobles filed suit against TXI, Civ.Act. No. H–78–1861; Brenda J. Wells sued TXI, Civ.Act. No. H–79–97; Sharon K. Appleton and Patricia K. Stovall sued TXI, Civ. Act. No. H–79–688. By Order dated March 29, 1979, the first three cases were consolidated under Civ.Act. No. 76–H–2056. The court granted leave to file an amended complaint, incorporating the individual claims into AFA's complaint. Soon thereafter Civ.Act. No. H–79–688 was consolidated into Civ.Act. No. 76–H–2056.

nate against female flight attendants employed by defendants including unlawful denial of employment opportunity upon pregnancy and unlawful denial of sick leave and other benefits.

AFA filed this suit within 90 days of receiving a right to sue notice from the EEOC.

The TXI policies and practices by which plaintiffs allegedly have been aggrieved include:

(1) Forced cessation of flying upon knowledge of pregnancy;

(2) Failure to provide benefits under maternity policies in effect prior to April, 1979; and

(3) Benefits only conditionally provided under maternity policies in effect after April, 1979.

Plaintiffs alleged that although these policies and practices may have had varying impact on individual members of the class, they have produced and continue to produce a pattern of discrimination against all TXI female flight attendants.

They define the class as all female flight attendants who are, were, or may in the future be employed by TXI, and who are, were, or may in the future be adversely affected by TXI's pregnancy and maternity leave of absence policies.

Each of the ten individual plaintiffs has been and is in the employ of TXI as a flight attendant and has been pregnant while so employed. Each of them allegedly has been affected adversely by TXI's policy of excluding pregnant flight attendants from the same benefits and work opportunities afforded TXI flight attendants for any other disability. They seek status of class representatives. The chronology of relevant jurisdictional events appears below as a chart, and is summarized herein.[2]

**2.**

| Deponent | I<br>*Date of Leave | II<br>**Date Pregnancy<br>Terminated | III<br>***Date Filed<br>Discrimination<br>Charges | IV<br>Number of<br>Days Between<br>Column II and III | V<br>Date of Issuance<br>Of Notice Of<br>Right to Sue |
|---|---|---|---|---|---|
| Sharon K. Appleton | 12–01–76 | 2–16–77 | 9–13–78 (notary) | 574 | 1–09–79 |
| | 3–02–79 | 6–28–79 | | | None |
| Hollace S. W. Hackler | 3–01–74 | 6–02–74 | 3–15–78 | 1,381 | 7–06–78 |
| | 11–04–78 | 2–08–79 | 2–14–79 | 137 | 3–28–79 (Notified to disregard, 4–18–79) |
| Olivia Martinez | 5–01–74 | 11–09–74 | 5–08–78 | 1,273 | 7–17–78 |
| Deborah L. McCulley | 7–16–71<br>6–01–73 | 2–20–72<br>1–07–74 | 3–15–78 | 1,526 | 7–06–78 |
| Avis B. Moore | 5–01–73 | 10–21–73 | 2–27–78 (Notice Of Charge) | 1,589 | 7–17–78 |
| Connie Nobles | 8–15–70 (depo) | 11–19–70 | 4–27–78 | 2,379 | 7–17–78 |
| Patricia Nobles | 8–01–70<br>4–01–77 | 12–05–70<br>9–15–77 | 3–16–78<br>4–05–78–Amended Charge<br>5–26–78–Second Amended Charge | 181 | 6–30–78 |
| Debra Schwartzenburg | 8–25–75 | 12–23–75 | 4–03–78 | 861 | 7–17–78 |
| Patricia K. Stovall | 9–19–77. | 5–06–78 | 10–31–78 (Notice Of Charge) | 179 | 1–09–79 |

Source:

 * Defendant Texas International Airlines, Inc.'s Responses and Objections to Plaintiff's First Set of Interrogatories Response No. 38
 ** Plaintiff Deposition
*** The Received Houston District Office EEOC Stamp unless otherwise noted

Eight of the ten filed charges of discrimination with the EEOC more than 180 days after giving birth to their babies.[3] Six of the eight received right to sue letters from the EEOC regarding each pregnancy. Ms. Hackler received two right to sue letters, one for each pregnancy, but was told by the EEOC to disregard the last one received. Ms. Appleton allegedly filed two claims, but received a right to sue notice only for the first filing.

Two of the plaintiffs, Ms. Stovall and Ms. Wells, filed claims to the EEOC within 180 days of giving birth. They received right to sue letters from the EEOC. Subsequently, Ms. Wells elected to have a tubal ligation.

All of the named plaintiffs filed suits in federal court within 90 days of receiving their right to sue letters.

The defendant contests certification on two basic theories: failure to comply with the jurisdictional prerequisites of Title VII, and inadequacy of the named plaintiffs to represent the class, under Rule 23. The jurisdictional argument is the more significant one. It encompasses three points: (1) failure of eight of the named plaintiffs to make timely filings with the EEOC, (2) failure of two of the named plaintiffs to exhaust their administrative remedies (Hackler and Appleton), and (3) the absence of any class representative who was affected by TXI's current maternity leave policies.

The court finds that the plaintiffs' failure to file charges with the EEOC within 180 days of the termination of their maternity leave does not bar their claims for two reasons. First, their union's filing of a charge with the EEOC in 1973 satisfies the filing requirement for the named individual plaintiffs. Second, the policies complained about constitute continuing violations of Title VII, if they are found illegal, and need not meet the 180 day limitation.

█ An EEOC charge filed by a union, in behalf of its members, may be the operative charge for members who wish to file suit, since the purposes of Title VII's jurisdictional prerequisites would be served by the union's filing. The purposes of the statutory requirement that an EEOC charge be filed 180 days after the alleged discriminatory act, and before a Title VII action commences in federal court are (1) to provide notice to the charged party, (2) to enable the parties to reconcile the grievance, and (3) to do so within a reasonable time of the grievous incident. *Beverly v. Lone Star Lead Construction Co.*, 437 F.2d 1136, 1139 (5th Cir. 1971).

These purposes are satisfied if the union's charge is the jurisdictional basis for individual members' suits. In *United Textile Workers of America v. Federal Paper Stock, Co.*, 461 F.2d 849 (8th Cir. 1972), the Eighth Circuit held that the filing of an

| | I | II | III | IV | V |
|---|---|---|---|---|---|
| Deponent | *Date of Leave | **Date Pregnancy Terminated | ***Date Filed Discrimination Charges | Number of Days Between Column II and III | Date of Issuance Of Notice Of Right to Sue |
| Brenda J. Wells | 2–25–74 | 10–04–74 | | | |
| | 7–21–77 | 12–22–77 | 5–12–78 | 141 | 10–30–78 |

Source:

\* Defendant Texas International Airlines, Inc.'s Responses and Objections to Plaintiff's First Set of Interrogatories Response No. 38
\*\* Plaintiff Deposition
\*\*\* The Received Houston District Office EEOC Stamp unless otherwise noted

Chart derived from:

Defendant's Memorandum in Opposition to Plaintiffs' Motion to Certify Class at Exhibit B, *AFA v. TXI*, Civ. Action No. 76–H–2056 (filed April 21, 1980).

---

**3.** 42 U.S.C. § 2000e–5(e) (1972) provides that, "A charge under this section shall be filed within one hundred and eighty days after the alleged unlawful employment practice occurred...." The defendant contends that the alleged discriminatory act is the maternity leave policy. Maternity leave ends when the child is born. Therefore, an EEOC charge regarding maternity leave would have to be filed 180 days after giving birth.

EEOC charge by a union, on behalf of its members satisfied the jurisdictional requirement for the members. The court permitted the aggrieved members of the union to be joined as plaintiffs. It explained that since the charge described exactly the same problem raised by the individuals, conciliation was attempted, and statutory notice was given, "the fact that it was the union, and not the female employees, who filed the charge [was] insignificant." 461 F.2d at 861.

Similarly, the district court in *International Brotherhood of Electrical Workers v. Westinghouse Electric Corp.*, 20 Empl.Prac. Dec. ¶ 30,082 (D.Md.1979), reasoned:

> A union is qualified, as a general rule, to represent its members as a class representative in Title VII cases. [Citations omitted.] It is now clearly established that if a class representative files a timely EEOC complaint, that filing will be sufficient for the whole class for purposes of the exhaustion requirement in 42 U.S.C. § 2000e–5. [Citations omitted.] The purposes of requiring a timely EEOC complaint are to promptly notify the defendant of the charges and to allow conciliation efforts to take place before suit is filed. [Citations omitted.] These policies were clearly met in this case.

20 Empl.Prac.Dec. at ———. Therefore, the district court permitted the union's charge to be the operational one for the purpose of jurisdiction over the individual plaintiffs' complaints.[4]

■ This court agrees with the decisions in *United Textile Workers* and *International Brotherhood of Electrical Workers*. Allowing the filing of an EEOC charge by a collective bargaining unit to be the operative charge for aggrieved union members who wish to file suit serves the purposes of Title VII's jurisdictional requirements. In addition, members of the union may have relied on the union's filing and decided not to file themselves. By not allowing the union's charge to be the operational one, the courts might preclude any union member from becoming an individual plaintiff and class representative in an otherwise viable class action.

■ In this case, ALPA's filing of an EEOC charge satisfied the purposes of the jurisdictional requirements for the individual plaintiffs. ALPA's filing notified TXI of the grievance. It gave the parties an opportunity to conciliate. The administrative process occurred in a reasonable time of the grievous practice, i. e. while the policy was in effect. And, the union's EEOC charge outlines the same issues raised by the individual plaintiffs. Thus, the individual plaintiffs' failure to file a timely EEOC charge is not a jurisdictional bar to their suit. The union's filing of a charge satisfies the jurisdictional requirement for them.

■ While jurisdiction over the named plaintiffs' suits is clearly supported by the union's filing, a persuasive argument can be made for jurisdiction on the basis of a continuing violation. An aggrieved party is released from the 180 day filing requirement if the action he complains about is a continuing violation of Title VII, as long as he files during the continuation of the policy, and within 180 days of termination. *Gonzalez v. Firestone Tire & Rubber Co.*, 610 F.2d 241, 249 (5th Cir. 1980).[5]

The Supreme Court defined a continuing violation in *United Air Lines, Inc. v. Evans*, 431 U.S. 553, 97 S.Ct. 1885, 52 L.Ed.2d 571 (1977). In *Evans*, the plaintiff stewardess was terminated in 1968 pursuant to a rule prohibiting continued employment after

---

4. *Cf. Air Line Pilots Association, International v. United Air Lines, Inc.*, 480 F.Supp. 1107 (E.D.N.Y.1979); *Schoeppner v. General Telephone Co. of Pa.*, 417 F.Supp. 453 (W.D.Pa. 1976); *Atkinson v. Owens-Illinois Glass Co.*, 10 FEP Cases 710 (N.D.Ga.1975); *Communication Workers of America v. New York Telephone Co.*, 8 FEP Cases 509 (S.D.N.Y.1974).

5. *See, In re Consolidated Pretrial Proceedings*, 582 F.2d 1142 (7th Cir..1978), U.S. *appeal pending sub nom., Zipes v. Trans World Airlines*, 442 U.S. 916, 99 S.Ct. 2834, 61 L.Ed.2d 282 (1979); *Laffey v. Northwest Airlines, Inc.*, 567 F.2d 429, 472–474 (D.C.Cir.1976) *cert. denied* 434 U.S. 1086, 98 S.Ct. 1281, 55 L.Ed.2d 792 (1978); *Cooper v. University of Texas*, 482 F.Supp. 187 (N.D.Tex.1979).

marriage. United discontinued its policy after Evans' termination and before the plaintiff was hired as a new employee in 1972. In 1973, she filed an EEOC charge, contending that her reemployment in 1972 without seniority retroactive to her prior employment continued the discriminatory effects of the initial termination. Rejecting Evans' claim as untimely, the court wrote:

Respondent emphasizes the fact that she has alleged a continuing violation. United's seniority system does indeed have a continuing impact on her pay and fringe benefits. But the emphasis should not be placed on mere continuity; the critical question is whether any present *violation* exists. She has not alleged that the system discriminates against former female employees who were discharged for a discriminatory reason any differently from former employees who resigned or were discharged for a nondiscriminatory reason. In short, the system is neutral in its operation.

431 U.S. at 558, 97 S.Ct. at 1889 (footnote omitted).

■ A recent Fifth Circuit case illustrates how the maintenance of an alleged discriminatory policy may constitute a continuing violation. In *Gonzalez v. Firestone Tire and Rubber Co., supra,* the plaintiff filed a charge with the EEOC more than 180 days after Firestone did not promote him. In his EEOC charge and his subsequent federal complaint, Gonzalez alleged that the defendant discriminated against Spanish-surnamed employees by promoting employees on the basis of an unvalidated and discriminatory testing system. He asserted that Firestone continued to subject him and members of his class to this discriminatory practice at the time the suit was filed. The Fifth Circuit held that his pleadings alleged facts of a continuing violation which were sufficient to avoid dismissal of his Title VII claim for failure to file a timely EEOC charge. 610 F.2d at

249. The appellate court remanded the case, ordering the district court to determine whether Firestone continued to base its promotions directly or indirectly on the unvalidated tests. If Firestone stopped using the tests more than 180 days before Gonzalez filed with the EEOC, then Gonzalez' claim would be time-barred. However, the claim would not be time-barred if Firestone continued using the test, relied on previous test scores, or tried to validate the test, and the validation process resulted in some discrimination to Spanish surnamed. Such current uses of the discriminatory test would constitute continuing violations, relieving the plaintiff of the requirement that he file a charge with the EEOC within 180 days of the grievous conduct.[6] 610 F.2d at 249.

In *Burwell v. Eastern Air Lines, Inc.,* 394 F.Supp. 1361 (E.D.Va.1975), as in this case, the plaintiff challenged Eastern's maternity leave policies. The airline terminated all stewardesses' employment when they became pregnant. It did not pay the stewardesses or give them insurance benefits while they were on leave. It did not allow them to accrue seniority while on leave; consequently, when Eastern rehired them and they returned to work after their maternity leaves, the stewardesses were in comparatively less favorable seniority positions than before they left. Burwell became pregnant, stopped flying on May 13, 1970, and returned to work on December 29, 1970. She filed an EEOC charge November 8, 1973. The court held that her claim was not time-barred. The court explained that Burwell's claim would have been barred had she challenged nothing more than the practices and procedures incident to her maternity leave. However, Burwell's EEOC charge covered a broader range of issues. The charge and complaint attacked the continuing effect of her maternity leave on her employment status, and "the present maintenance by Eastern of its pregnancy policies

---

6. A policy of discrimination may also be evidenced by a series of isolated discriminatory acts. In *Reed v. Lockheed Aircraft Corp.,* 613 F.2d 757 (9th Cir. 1980), the Ninth Circuit stated, "It is the ongoing program of discrimination rather than any of its particular manifestations that is the subject of the attack, 613 F.2d at 762.

with regard to female flight attendants." 394 F.Supp. at 1367. The court held that "her charges that an employment practice continues to exist and continues to discriminate against her are sufficient to constitute a timely filing with the EEOC." *Id.*

The Court of Appeals for the Seventh Circuit elaborated on the continuing violation theory in *In Re Consolidated Pretrial Proceedings in the Airline Cases,* 582 F.2d 1142 (7th Cir. 1978), *U.S. appeal pending sub nom. Zipes v. Trans World Airlines,* 442 U.S. 916, 99 S.Ct. 2834, 61 L.Ed.2d 282 (1979) (hereinafter cited as *Consolidated Pretrial Proceedings*). The airline terminated stewardesses' employment when they became pregnant. The airline reinstated some of the stewardesses in ground positions after their maternity leave. The court found that

> [The reinstated] employees were properly included in the class because they were subject to a continuing violation. When they resumed employment after becoming a mother, the discriminatory violation, which lay dormant during their pregnancy, was revived; that they were forced to accept a presumably less preferable ground duty position while new employees were hired for flight duty revived the violation and rendered it as to them a continuing one.

*Id.* at 1149.

The court refused to include in the class employees who were permanently terminated from the airline more than 90 days prior to the filing of the EEOC claim. It explained the importance of distinction between the plaintiffs who continued to work for the airline and those who were terminated. It wrote,

> The returning employee remains within the ambiance of a continuing relationship of employment and supervision and thus is directly subject to the employer's discriminatory actions. The non-returning employee is outside this ambiance and thus feels at most only the indirect reverberations of those actions. Although the non-returning employee who did not desire to remain as a TWA employee in a

non-flight position may arguably suffer some form of discrimination whenever the employer hires a new flight cabin attendant instead of reinstating the terminated employee, the discriminatory impact is diffuse and uncertain. Permanent severance of the employment relationship destroys the ties through which the direct impact of discrimination may be transmitted.

582 F.2d at 1150. "[I]t is the continuity of the employment relationship that sustains the violation, and when that relationship is severed, the violation ceases." *Id.* at 1149.

Thus, the Seventh Circuit requires the fulfilment of two conditions for the waiver of the timely filing requirement, where a continuing violation is claimed. It requires the current maintenance of a discriminatory policy or practice, and the continuity of the employment relationship between the plaintiff and the employer.

Several other circuits also require the maintenance of the employment relationship within 180 days of the filing of the charge as a prerequisite to membership in the class under the continuing violation theory. See *Laffey v. Northwest Airlines, Inc.,* 567 F.2d 429, 473 (D.C.Cir.1976); *Wetzel v. Liberty Mutual Insurance Co.,* 508 F.2d 239, 246 (3d Cir. 1975), *cert. denied,* 421 U.S. 1011, 95 S.Ct. 2415, 44 L.Ed.2d 679 (1975). The Fifth Circuit has not ruled directly on this point. One district court in the Fifth Circuit has required the maintenance of the employment relationship. *Cooper v. University of Texas at Dallas,* 482 F.Supp. 187, 190 (N.D.Tex.1979). This court expresses no opinion on the adoption of this requirement, since it has not been raised as an issue in this case.

The alleged continuing violation in this case differs from the continuing violations in *Consolidated Pretrial Proceedings, Burwell* and *Gonzalez* in one significant respect. The discriminatory policies in the three cited cases affected the plaintiffs on a day to day basis. In *Consolidated Pretrial Proceedings,* the alleged discriminatory policy prevented a married employee from being a stewardess every day she worked for the

airline. In *Burwell*, the airline's policies which affected the plaintiff's seniority position impacted on her regularly when she returned to work, e. g. she could not have priority in selecting her flight schedule. In *Gonzalez*, the alleged discriminatory testing prevented Spanish-surnamed employees from advancing in the company, all the time they worked. In this case, TXI's policies have been in effect, in one form or another, at least since 1970. In that sense, they are continuing in nature. However, they affect the female flight attendants only when they become pregnant, not when they return to work. Thus, in this case, there exists a current practice, which only occasionally impacts on female flight attendants.

■ This court finds that the fact that a continuing policy affects the plaintiffs only occasionally does not remove the claim from the category of continuing violations. It is the ongoing nature of the policy and its absolute impact if a flight attendant becomes pregnant which characterizes it as a continuing violation.

The plaintiffs' charge and complaint allege facts which support the claim that TXI maintains a discriminatory policy pertaining to pregnancy benefits and maternity leave, and that that policy constitutes a continuing violation of Title VII. The eight named plaintiffs are, therefore, released from the requirement that charges be filed with the EEOC within 180 days of the grievous, discriminatory act.

■ There is a conflict between the union filing basis for jurisdiction and the continuing violation basis for jurisdiction, vis-a-vis the cut off date for defining the class. Under the union charge, presumably any person who could have filed a charge with the EEOC within 180 days of the union's filing would be eligible to be a class member. If the union filed a charge July 30, 1973, any person who could have filed by approximately January 30, 1973, would be eligible to be a class member. Under the continuing violation theory, a person who took maternity leave more than 180 days before the filing of the charge would be

eligible to be a class member. Yet, that person would not be eligible to be a class member under the union filing theory.

The court rules that the plaintiffs' allegation of a continuing violation provides the primary basis for the waiver of the 180 day filing requirement for the named plaintiffs, and the primary basis for jurisdiction. Thus, female flight attendants who worked for TXI at any time during the maintenance of the allegedly discriminatory policy are eligible to be members of the class.

■ As its second jurisdictional challenge to class certification, the defendant contends that plaintiffs Hackler's and Appleton's failure to exhaust their administrative remedies precludes their designation as class representatives. As noted above, Hackler filed two EEOC charges, received two right to sue letters, and was told by the EEOC to disregard the last one. Appleton allegedly filed two EEOC charges, but received only one right to sue letter. In light of the union's exhaustion of administrative remedies, neither named plaintiff had to exhaust her administrative remedies. *See, Schoeppner v. General Telephone Co. of Pa.*, 417 F.Supp. 453 (W.D.Pa.1976).

Third, the defendant argues that the absence of any class representative who has been affected by TXI's post-April, 1979 maternity leave policies limits this class action to pre-April, 1979 claims. In the Memorandum and Order disposing of the plaintiffs' motion for partial summary judgment, this court held that the plaintiffs did not have to pursue their administrative remedy with respect to their claim against TXI's post-April, 1979 policies. This court held that,

The plaintiffs' claim [regarding] the post-April, 1979 policies is related to the grievance already investigated by the EEOC. Both claims pertain to TXI's maternity leave and disability benefit policies. The fact that Congress amended the Title VII in the intervening years does not detract from the relatedness of the claims: TXI's new policy includes regulations which were integral parts of the former plan. The amendment has not spurred TXI to

ameliorate plaintiffs' original grievance. There is no reason to believe additional EEOC investigation and arbitration will soften TXI's position.

Memorandum and Order at 5, *AFA v. TXI,* Civ. No. 76–H–2056 (S.D.Tex. May 7, 1980). Since the court did not dismiss the plaintiffs' claim against the defendant's post-April, 1979 policies, it will not preclude the claim from being raised in the class action. Therefore, the court holds that the class action will not be limited to pre-April, 1979 claims.

Determining that the defendant's jurisdictional challenges to class certification are without merit, the court turns to TXI's contest to class certification on the basis that Rule 23's requirements have not been met. Rule 23(a) and (b)(2) states, in relevant part:

> (a) Prerequisites to a Class Action. One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.
>
> (b) Class Actions Maintainable. An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:
>
> . . . . .
>
> (2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole;

The plaintiffs demonstrated, and TXI did not refute, that the first three requirements of Rule 23 have been met. Similarly, plaintiffs demonstrated that the further requirements of Rule 23(b)(2) have been met, and the defendants have not objected. TXI

contests the plaintiffs' assertion that Rule 23(a)(4) is satisfied. TXI argues that none of the named plaintiffs are adequate class representatives, as required by Rule 23(a)(4). It bases its challenge on three factors: the individuals' lack of familiarity with TXI's policies and with the litigation, Sheila Hammond's involvement in this case,[7] and the fact that plaintiff Wells underwent a tubal ligation and filed a charge individually, not in behalf of the class.

This court finds that the defendant's contentions regarding the adequacy of the class representatives are without merit. In determining whether or not those seeking representative status will adequately represent the interests of absent class members, a court must consider two factors. This court set forth those factors in *Doe v. First City Bancorporation, Inc.,* 81 F.R.D. 562 (S.D.Tex.1978):

> "(a) the plaintiff's attorney must be qualified, experienced and generally able to conduct the proposed litigation; and
>
> (b) the plaintiff must not have interests antagonistic to those of the class. *Eisen v. Carlisle & Jacquelin,* 391 F.2d 555, 562 (2nd Cir. 1968) (Eisen II). *Wetzel v. Liberty Mutual Insurance Co.,* 508 F.2d 239, 247 (3rd Cir. 1975), cert. denied 421 U.S. 1011, 95 S.Ct. 2415, 44 L.Ed.2d 679 (1975).

81 F.R.D. at 570. *See also, Johnson v. Georgia Highway Express, Inc.,* 417 F.2d 1122, 1125 (5th Cir. 1969).

The named plaintiffs' lack of knowledge of their employers specific policies or the conduct of the litigation is not relevant to the question of the adequacy of class representative. As observed by Judge Woodrow Seals in *Albers v. Hycel, Inc.,* 18 FEP Cases 867, (S.D.Tex.1978),

> The Court is aware of no absolute requirement that the class representatives be knowledgeable of the defendant's operations. The Court being satisfied that plaintiffs' attorney is able to conduct the proposed litigation, concludes that the use

---

7. Ms. Hammond is the AFA Master Executive Chairperson for the TXI flight attendants.

of discovery should enable plaintiffs to uncover sufficient facts, if such facts exist, to support their claim. There is no rule that they must be intimately acquainted with the Defendant's operations before they can bring an action.

18 FEP Cases at 869. *Accord, Ligon v. Frito-Lay, Inc.* 82 F.R.D. 42, 47–48 (N.D. Tex.1979).

This court concurs with Judge Seals' conclusion, and holds that the plaintiffs' unfamiliarity with TXI's policies or the litigation is irrelevant to their adequacy as class representatives. Furthermore, this court finds that Sheila Hammond's extensive involvement in the matter does not impugn the adequacy of the class representatives.

 The defendant's claim that Wells cannot adequately represent the class because she underwent a tubal ligation is without merit. The two cases cited by the defendant do not undermine Wells' status. In *Tuft v. McDonnell Douglas Corp.*, 581 F.2d 1304 (8th Cir. 1978), the plaintiff who challenged the defendant's pregnancy policies had never been injured by them and never could be injured by them because she had a hysterectomy. In *East Texas Motor Freight System, Inc. v. Rodriguez*, 431 U.S. 395, 97 S.Ct. 1891, 52 L.Ed.2d 453 (1977), the plaintiffs never sought class certification and were not members of the class. They did not possess the qualifications for the job which was the subject of the alleged discrimination. In this case, Wells allegedly was injured by TXI's maternity leave policies and she would be a member of the class. Her election of a tubal ligation as a means of birth control, instead of any other less permanent method, does not obstruct her representation of the class.

TXI also argues that Wells is not an adequate class representative because she filed her complaint against TXI in her individual capacity, rather than in behalf of herself and others similarly situated. TXI cites no cases in support of their proposition. In view of the court's decision concerning the timeliness of filing, the consolidation of the various actions and the amendment of AFA's original complaint to include the named plaintiffs, the court finds that Wells' filing in an individual capacity does not bar her from being a class representative, as long as she consented to being a class representative. There is no evidence showing she did not consent to be a class representative. Therefore, neither Wells' tubal ligation nor her filing in her own behalf preclude her from being a class representative.

 The court finds the plaintiffs have met all of the requirements of Rule 23(a) and (b)(2), and that plaintiffs McCulley, Moore, Martinez, Hackler, C. Nobles, Schwartzenburg, P. Nobles, Appleton, Wells and Stovall may represent the class in this suit.

In accordance with the preceding memorandum, it is hereby ORDERED, ADJUDGED, and DECREED that, plaintiffs' motion to certify the class be and the same is GRANTED.

It is further ORDERED, ADJUDGED, and DECREED that the plaintiffs shall submit a proposed definition of the class, consistent with this opinion, within ten days of receipt of this Memorandum and Order. The defendant shall have ten days thereafter in which to respond to the plaintiffs' proposed class definition. In regard to the class definition, the parties should take into consideration the fact that both injunctive relief and damages are sought in this suit, which may raise a question regarding the statute of limitations. The parties should also take into consideration that there may be some employees of Texas International Airlines who were injured by the defendant's allegedly discriminatory practices and who no longer work for the airline.